UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED

2010 MAY 12  PM 12: 14

US DISTRICT COURT
MIDDLE DISTRICT OF FL

MIRABILIS VENTURES, INC.,
a Nevada corporation,

CASE NO.

6:10 cv-737-orl -18KPS

Plaintiff,

v.

SPECIALTY UNDERWRITERS'
ALLIANCE INSURANCE COMPANY,
a/k/a SUA INSURANCE COMPANY,
an Illinois corporation, and UNIVERSAL
RE-INSURANCE COMPANY, LIMITED,
a Bermuda corporation,

Defendants.

_____/

## COMPLAINT

Plaintiff, Mirabilis Ventures, Inc., sues Defendants, Specialty Underwriters' Alliance Insurance Company, a/k/a SUA Insurance Company, and Universal Re-Insurance Company, Limited, and says:

### Jurisdiction and Parties

1. This is an action between corporations domiciled in different states and a foreign country for damages exceeding $75,000.00, exclusive of interest, costs, and attorneys' fees, and is within the jurisdiction of the Court pursuant to 28 USCA §1332.

2. Mirabilis is a Nevada corporation whose principal place of business is in Maitland, Orange County, Florida. Mirabilis owns AEM, Inc., with which it has filed a joint plan of liquidation in consolidated Chapter 11 bankruptcy proceedings.[1] The Plan vests capacity in Mirabilis to enforce all legal rights of AEM, Inc., at the direction of the Liquidating

---

[1] *In re Mirabilis Ventures, Inc., et al.*, United States Bankruptcy Court (M.D.Fla.) case numbers 6:08-bk-04327-KSJ; 6:08-bk-04328-KSJ, and 6:08-bk-04681-KSJ.

Agent, R.W. Cuthill, Mirabilis' president. Mr. Cuthill has authorized the prosecution of this action by Mirabilis, the real party in interest, for and on behalf of AEM, an inactive Florida corporation whose principal place of business was at all material times in Orlando, Orange County, Florida.

3. SUA is an Illinois corporation whose principal place of business is in Chicago, Cook County, Illinois.

4. Universal is a Bermuda corporation whose principal place of business is in Hamilton, Pembroke Parish, Bermuda.

5. Venue in this Court is appropriate pursuant to 28 USCA §1391 in that a substantial part of the events or omissions giving rise to AEM's claims occurred in this judicial district.

### General Allegations

6.    On or about 1 January 2006, SUA issued AEM workers' compensation and employers' liability policy number WSLTHPE000080 02 (02 policy). AEM does not have a complete copy of the 02 policy; the partial copy it has is attached as exhibit 1. The 02 policy is a loss-sensitive, high deductible policy applied for by, and delivered to, AEM in Florida.

7. On or about 1 January 2007, SUA issued AEM workers' compensation and employers' liability policy number WSLTHPE000080 03 (03 policy). AEM does not have a copy of the 03 policy. The 03 policy is a loss-sensitive, high deductible policy applied for by, and delivered to, AEM in Florida.

8. In January 2006, Universal International Reinsurance Ltd. issued a deductible reimbursement policy to AEM to provide the latter with workers' compensation

deductible reimbursement coverage for the deductible payments that would be due from AEM to SUA under the terms of the 02 policy.

9. In January 2006, Universal contracted with AEM to provide the latter with rent-a-captive services in conjunction with the deductible reimbursement policy issued by Universal International Reinsurance Ltd. A copy of the rent-a-captive service agreement (agreement), applied for by and delivered to AEM in Florida, is attached as exhibit 2.

10. Pursuant to the agreement, AEM deposited funds with Universal to provide the collateral to pay for AEM's deductible obligations under the 02 policy. Universal accepted AEM's deposits and acted as a fiduciary for the purpose of funding AEM's deductible obligations for workers' compensation claims submitted pursuant to the 02 policy.

11. The 02 and 03 policies by law incorporate applicable regulatory rules promulgated by NCCI, the National Council on Compensation Insurance, the authorized ratemaking authority for Florida, including but not limited to the Florida State Special Audit Rules.[2] These regulatory rules are thus part of the 02 and 03 policies by operation of law and impose rights and responsibilities on SUA, the insurer, and AEM, the insured.

12. In accord with the terms of the 02 and 03 policies and the Florida State Special Audit Rules, SUA was required to have conducted an audit of AEM's business operations to determine AEM's actual workers' compensation exposure for each policy period to assess the actual amount of premium owed.

13. SUA, however, did not conduct the required audit and instead arbitrarily decided to impute AEM's exposure for each policy period on the basis that AEM had not supplied

---

[2] Miabilis does not attach the referenced regulatory rules, which are copyright. They may be purchased from NCCI.

SUA with sufficient business records by which SUA could identify the exposures for the 02 and 03 policy periods.

14. SUA then billed AEM for additional premiums based upon its imputed audits. AEM disputed SUA's imputed audits and asked SUA to conduct a physical audit of AEM for both policy terms so that SUA could determine the correct premiums owed, if any, for the 02 and 03 policy periods.

15. SUA refused to conduct the audit, in violation of regulatory rule, and instead billed and tried to collect from AEM the additional premium SUA said was due as a result of its imputed audit. AEM disputed SUA's claim to additional premium.

16. SUA then told Universal to remit to SUA $541,517.00 in collateral that AEM had deposited with Universal to cover AEM's deductible obligations, in partial satisfaction of SUA's premium bill that AEM disputed.

17. In response to SUA's demand, Universal remitted to SUA money in partial payment of the disputed premium bill. At no time did Universal have AEM's authority to remit AEM's deductible funds to SUA to pay premium.

18. In December 2008, AEM demanded that Universal account for all funds paid by AEM pursuant to the agreement. Universal ignored, and continues to ignore, AEM's demand.

19. AEM hired its own workers' compensation premium auditor to conduct a physical audit for both the 02 and 03 policies. The auditor determined, based on the physical audit that is required by regulatory rule, AEM was in fact due a refund of $3,350,663.00 for the 02 policy and $573,121.00 for the 03 policy. In September 2009, AEM demanded the

return of its overpaid premium and again demanded that SUA conduct the premium audit required by regulatory rule.

20. In October 2009, SUA's representative went to AEM's premises and was provided complete access to AEM's business records for the 02 and 03 policy periods and AEM's president and its auditor.

21. SUA thereafter refused to communicate with AEM regarding the results, if any, of its October 2009 re-audit of the 02 and 03 policies and has also refused to refund any amount of the premium AEM's auditor has determined AEM overpaid SUA.

22. All conditions precedent to this action have either been performed or waived or have occurred.

### Count I- Breach of Contract (SUA; 02 Policy)

23. Mirabilis here realleges paragraphs 1-3; 5-6; 11-15, and 19-22.

24. The 02 policy is a contract that contains the respective rights and responsibilities of SUA, as insurer, and AEM, as insured.

25. All applicable regulatory rules are by operation of law part of all workers' compensation policies issued for delivery to insureds in the State of Florida.

26. SUA breached the 02 policy by failing to properly audit AEM; demanding and trying to collect excessive and insupportable premium; failing to bill AEM pursuant to the actual exposure determined by AEM's business activity during the 02 policy period, and failing to remit substantial overpayment of premium.

27. As a result of SUA's breaches of contract, AEM and Mirabilis have been damaged. Plaintiff, Mirabilis Ventures, Inc., therefore demands judgment for damages against Defendant, Specialty Underwriters' Alliance Insurance Company, a/k/a SUA Insurance

Company, in the principal amount of $3,350,663.00; interest; costs, and other appropriate relief.

## Count II- Breach of Contract (SUA; 03 Policy)

28. Mirabilis here realleges paragraphs 1-3; 5; 7; 11-15, and 19-22.

29. The 03 policy is a contract that contains the respective rights and responsibilities of SUA, as insurer, and AEM, as insured.

30. All applicable regulatory rules are by operation of law part of all workers' compensation policies issued for delivery to insureds in the State of Florida.

31. SUA breached the 03 policy by failing to properly audit AEM; demanding and trying to collect excessive and insupportable premium; failing to bill AEM pursuant to the actual exposure determined by AEM's business activity during the 03 policy period, and failing to remit substantial overpayment of premium.

32. As a result of SUA's breaches of contract, AEM and Mirabilis have been damaged. Plaintiff, Mirabilis Ventures, Inc., therefore demands judgment for damages against Defendant, Specialty Underwriters' Alliance Insurance Company, a/k/a SUA Insurance Company, in the principal amount of $573,121.00; interest; costs, and other appropriate relief.

## Count III- Breach of Duty of Good Faith (SUA; 02 Policy)

33. Mirabilis here realleges paragraphs 1-3; 5-6; 11-15, and 19-22.

34. The 02 policy provides that SUA may investigate and settle workers' compensation claims brought pursuant to the 02 policy.

35. Since the 02 policy is a high-deductible, loss-sensitive policy, claims payments affect the premium and fees chargeable to AEM.

36. Since the investigation and settlement of worker's compensation claims affected AEM's premium and fees, there is implied in the 02 policy a duty of good faith with respect to SUA's investigation and settlement of any claim presented pursuant to the 02 policy.

37. SUA breached its duty of good faith by investigating and settling the claims of workers who were not insured pursuant to the 02 policy.

38. As a result of SUA's breach of its duty of good faith, AEM and Mirabilis have been damaged.

Plaintiff, Mirabilis Ventures, Inc., therefore demands judgment for damages against Defendant, Specialty Underwriters' Alliance Insurance Company, a/k/a SUA Insurance Company, in an amount according to proof but of a sum within the jurisdictional limit of the Court; interest; costs, and other appropriate relief.

## Count IV- Breach of Duty of Good Faith (SUA; 03 Policy)

39. Mirabilis here realleges paragraphs 1-3; 5; 7; 11-15, and 19-22.

40. The 03 policy provides that SUA may investigate and settle workers' compensation claims brought pursuant to the 03 policy.

41. Since the 03 policy is a high-deductible, loss-sensitive policy, claims payments affect the premium and fees chargeable to AEM.

42. Since the investigation and settlement of worker's compensation claims affected AEM's premium and fees, there is implied in the 03 policy a duty of good faith with respect to SUA's investigation and settlement of any claim presented pursuant to the 03 policy.

43. SUA breached its duty of good faith by investigating and settling the claims of workers who were not insured pursuant to the 03 policy.

44. As a result of SUA's breach of its duty of good faith, AEM and Mirabilis have been damaged.

Plaintiff, Mirabilis Ventures, Inc., therefore demands judgment for damages against Defendant, Specialty Underwriters' Alliance Insurance Company, a/k/a SUA Insurance Company, in an amount according to proof but of a sum within the jurisdictional limit of the Court; interest; costs, and other appropriate relief.

### Count V- Breach of Contract (Universal)

45. Mirabilis here realleges paragraphs 1-2; 4-6, and 8-22.

46. The agreement is a contract that contains the respective rights and responsibilities of Universal and AEM.

47. Universal breached the agreement by paying SUA funds that AEM had deposited with Universal to cover AEM's deductible obligations, which funds were not to be used to pay premium, disputed or otherwise.

48.   As a result of Universal's breach of contract, AEM and Mirabilis have been damaged.

Plaintiff, Mirabilis Ventures, Inc., therefore demands judgment for damages against Defendant, Universal Re-Insurance Company, Ltd., in the principal amount of $541,517.00; interest; costs, and other appropriate relief.

### Count VI- Conversion (Universal)

49. Mirabilis here realleges paragraphs 1-2; 4-6, and 8-22.

50. In 2007, when it paid SUA funds that had been deposited by AEM with Universal for a particular purpose, Universal engaged in an act of dominion, wrongfully asserted, with respect to such funds in a manner wholly inconsistent with the agreement and AEM's ownership interest in such funds.

51. In 2007, Universal converted $541,517.00 that AEM had deposited with Universal as collateral for AEM's deductible obligations, thus depriving AEM of its property rights for a permanent and indefinite period.

52. Universal refuses to reimburse or even account for the funds of which AEM has been wrongfully divested and its actions, in gross derogation of its contractual authority and disregard of AEM's rights, warrant the imposition of punitive damages.

Plaintiff, Mirabilis Ventures, Inc., therefore demands judgment for damages against Defendant, Universal Re-Insurance Company, Ltd., in an amount according to proof but within the jurisdictional limit of the Court; punitive damages; interest; costs, and other appropriate relief.

### Count VII- Breach of Fiduciary Duty (Universal)

53. Mirabilis here realleges paragraphs 1-2; 4-6, and 8-22.

54. AEM depended on Universal to protect the funds it had deposited with Universal so that the funds would be used to satisfy AEM's deductible obligations under the 02 policy.

55. Universal induced AEM's trust, and AEM in fact reposed its trust in Universal, and it deposited funds with Universal for the express and sole purpose of covering its deductible obligations to SUA.

56. Universal breached the fiduciary duty it owed to AEM by impermissibly, and without authorization, paying AEM's money to another party for a purpose not agreed by the

parties nor permitted by their agreement. Universal's actions, in gross derogation of its contractual authority and disregard of AEM's rights, warrant the imposition of punitive damages.

Plaintiff, Mirabilis Ventures, Inc., therefore demands judgment for damages against Defendant, Universal Re-Insurance Company, Ltd., in an amount according to proof but within the jurisdictional limit of the Court; punitive damages; interest; costs, and other appropriate relief.

Dated this 10th day of May 2010.

Respectfully submitted,

_____, Trial Counsel          _____, Trial Counsel
J. Layne Smith                                    Michael R. Morris
Florida Bar Number 712930                         Florida Bar Number 70254
Smith, Brooks & Masterson, P.L.                   Morris & Morris, P.A.
2629 Mitcham Drive                                777 South Flagler Drive, Suite 800- West Tower
Tallahassee, Florida 32308                        West Palm Beach, Florida 33401
Telephone No. 850.385.8000                        Telephone No. 561.838.9811
Facsimile No. 850.201.8000                        Facsimile No. 561.828.9351
E-mail address jaylayne44@aol.com                 E-mail address mrmorris@morris-morris.com

# EXHIBIT 1

# SUA Insurance Company

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows:

### GENERAL SECTION

A. **The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

B. **Who is Insured**

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

C. **Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

D. **State**

Sate means any state of the United States of America, and the District of Columbia.

E. **Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

### PART ONE
### WORKERS COMPENSATION INSURANCE

A. **How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.
2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

B. **We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

C. **We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this Insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

D. **We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;
2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;
3. litigation costs taxed against you;
4. interest on a judgment as required by law until we offer the amount due under this insurance; and
5. expenses we incur.

E. **Other Insurance**

We will not pay more than our share of benefits and costs covered by this insurance and other

© 1991 National Council on Compensation Insurance.

insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

## F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;
2. you knowingly employ an employee in violation of law;
3. you fail to comply with health or safety law or regulation; or
4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

## G. Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

## H. Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.
2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.
3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.
4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.
5. This insurance conforms to the parts of the

workers compensation law that apply to:

a. benefits payable by this insurance;
b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to the law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO
## EMPLOYERS LIABILITY INSURANCE

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.
3. Bodily injury by accident must occur during the policy period.
4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.
5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

### B. We Will Pay

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employ-ers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against

such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

C.  **Exclusions**

This insurance does not cover:

1. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. bodily injury intentionally caused or aggravated by you;

6. bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine

Health and Safety Act of 1969 (30 USC Sections 901-942), any other federal workers or workmen's compensa-tion law or other federal occupational disease law, or any amendments to these laws;

9. bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sec-tions 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. bodily injury to a master or member of the crew of any vessel;

11. fines or penalties imposed for violation of federal or state law; and

12. damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

D.  **We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

E.  **We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend;

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance, and

5. expenses we incur.

F.  **Other Insurance**

We will not pay more than our share of damages and cost covered by this insurance and other insurance or self-insurance. Subject to any limits of li-ability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is ex-hausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

G.  **Limits of Liability**

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1.  Bodily Injury by Accident. The limit shown for "bodily injury by accident—each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

    A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2.  Bodily Injury by Disease. The limit shown for "bodily injury by disease—policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by dis-ease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease—each em-ployee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

    Bodily injury by disease does not include dis-ease that results directly from a bodily injury by accident.

3.  We will not pay any claims for damages after we have paid the applicable limit of our liability un-der this insurance.

H.  **Recovery From Others**

We have your rights to recover our payment from anyone liable for any injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

I.  **Actions Against Us**

There will be no right of action against us under this insurance unless:

1.  You have complied with all the terms of this policy; and

2.  The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to deter-mine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obliga-tions under this Part.

## PART THREE
## OTHER STATES INSURANCE

A.  **How This Insurance Applies**

1.  This other states insurance applies only if one or more states are shown in Item 3.C. of the Infor-mation Page.

2.  If you begin work in any one of those states after the effective date of this policy and are not in-sured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3.  We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4.  If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

B.  **Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR
## YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1.  Provide for immediate medical and other serv-ices required by the workers compensation law.

2.  Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

1st Reprint

*Effective April 1, 1992*

WC 00 00 00 A

Standard

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may re-quest, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would in-terfere with our right to recover from others.

6. Do not voluntarily make payments, assume obli-gations or incur expenses, except at your own cost.

## PART FIVE—PREMIUM

### A. Our Manuals

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifica-tions. We may change our manuals and apply the changes to this policy if authorized by law or a gov-ernmental agency regulating this insurance.

### B. Classifications

Item 4 of the Information Page shows the rate and premium basis for certain business or work classify-cations. These classifications were assigned based on a estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

### C. Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remu-neration is the most common premium basis. This premium basis includes payroll and all other remu-neration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Com-pensation Insurance) of this policy. If you do not have payroll records for these persons, the con-tract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the em-ployers of these persons lawfully secured their workers compensation obligations.

### D. Premium Payments

You will pay all premium when due. You will pay the premium even if part or all of a workers compensa-tion law is not valid.

### E. Final Premium

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after the policy ends by using the actual, not the estimated, pre-mium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the bal-ance. If it is less, we will refund the balance to you The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be de-termined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short-rate cancelation table and procedure. Final premium will not be less than the minimum premium.

### F. Records

You will keep records of information needed to com-pute premium. You will provide us with copies of those records when we ask for them.

### G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and pro-grams for storing and retrieving data. We may con-duct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

© 1991 National Council on Compensation Insurance.

Page 5 of 6

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

1st Reprint

*Effective April 1, 1992*

WC 00 00 00 A

Standard

## PART SIX—CONDITIONS

### A. Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurabil-ity of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organi-zations have the same rights we have under this provision.

### B. Long Term Policy

If the policy period is longer than one year and six-teen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

### C. Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal represen-tative as insured.

### D. Cancelation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2. We may cancel this policy. We must mail or de-liver to you not less than ten days advance written notice stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Informa-tion Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancelation notice.

4. Any of these provisions that conflict with a law that controls the cancelation of the insurance in this policy is changed by this statement to com-ply with the law.

### E. Sole Representative

The insured first name in Item 1 of the Information Page will act on behalf o all insureds to change this policy, receive return premium, and give or receive notice of cancelation.

© 1991 National Council on Compensation Insurance.

## Standard Workers' Compensation
## and Employers' Liability Policy

Policy Number: WSLTHPE 000080 02
Policy Period: 1/1/2006 to 1/1/2007
Coverage by: SUA Insurance Company
Producer Id: 2 / 8
Prev. Coverage: None
Carrier Id: 33514

- Amended Information Page - Add Location(s)
- Amended Information Page - Delete Location(s)
- Amended Information Page - Change Location(s)
- Supersedes any previous Information Pages bearing the same number for this policy period.
- Amended Information Page - Change Location(s) 09/24/06

AGENT

1. AEM, Inc.
   8095 NW 12th St
   Suite 301
   Miami, FL 33126-

   FEIN: 69-2720545

   Lighthouse, LLC
   301 East Pine Street, Ste 350
   Orlando, FL 32801-

Locations - All usual work places of the insured at or from which operations covered by this policy are conducted at the above address unless otherwise stated herein: See Attached Schedule.

Entity of insured:

2. The policy period is from 01/01/06 to 01/01/07 12:01 AM Standard Time at the Insured's mailing address.

3. A. Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation law of the states listed here: FL, TX

   B. Employers' Liability Insurance: Part Two of the policy applies to work in each state listed in Item 3A. The limits of our liability under Part Two are:

   | | | |
   |---|---|---|
   | Bodily Injury by Accident | $1,000,000 | Each Accident |
   | Bodily Injury by Disease | $1,000,000 | Policy Limit |
   | Bodily Injury by Disease | $1,000,000 | Each Employee |

   C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:

   D. See attached schedule for list of endorsements forming part of this policy.

4. The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates, and Rating Plans. All information required below is subject to verification and change Interim adjustments of premium shall be made monthly.

   Per Attached Schedule:
   Minimum Premium: $1,000
   Average Premium Discount: 0.0000%
   Expense Constant: $200

   Total Estimated Annual Premium: $3,909,188
   Deposit Premium: $0
   Additional Assessments:

   Policy Issuing Office: Chicago, IL

   Countersigned by: _____

WC 00 00 01 A
Issue Date: 12/12/2006
Copyright 1987 National Council on Compensation Insurance          Original

## Standard Workers' Compensation and Employers' Liability Policy

Policy Number: WSLTHPB 000080 02
Policy Period: 1/1/2006 to 1/1/2007
Coverage by: SUA Insurance Company
Producer Id: 2 / 8
Prev. Coverage: None
Carrier Id: 33514

| NAME AND ADDRESS OF INSURED | AGENT |
|---|---|
| 1. ABM, Inc.<br>8095 NW 12th St<br>Suite 301<br>Miami, FL 33126- | Lighthouse, LLC<br>301 East Pine Street, Ste 350<br>Orlando, FL 32801- |

FEIN: 59-2720545

Locations - All usual work places of the insured at or from which operations covered by this policy are conducted at the above address unless otherwise stated herein: See Attached Schedule.

Policy Page: 466

Schedule Page: 1 of

# ENDORSEMENT SCHEDULE

| State | NUMBER | DESCRIPTION |
|---|---|---|
| FL | WC000301A | Alternate Employer Endorsement (All states except Texas) |
| FL | WC000406 | PREMIUM DISCOUNT ENDORSEMENT |
| FL | WC000420 | Terrorism Risk Insurance Act |
| FL | WC000422 | Foreign Terrorism Premium |
| FL | WC090303 | Florida Employers Liability Coverage |
| TX | WC420301F | Texas Amendatory |
| TX | WC420407 | Texas - Audit Premium and Retrospective Premium |

WC 00 00 ES
Issue Date: 12/12/2006

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**                    **WC 00 04 06**

## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

### Schedule

1. **State**                                    **Estimated Eligible Premium**

| | First $5,000 | Next $95,000 | Next $400,000 | Balance |
|---|---|---|---|---|
| FL | 0.00% | -10.90% | -12.60% | -14.40% |
| | First $5,000 | Next $95,000 | Next $400,000 | Balance |
| TX | 0.00% | -8.40% | -10.50% | -11.00% |

2. Average percentage discount:


3. Other Policies:



4. If there are no entries in Items 1, 2 and 3 of the Schedule, see the Premium Discount Endorsement attached to your policy number:


Policy Number: WSLTHPE 000080 02                Insured: AEM, Inc.
Endorsement Effective: 01/01/2006               Coverage Provided by: SUA Insurance Company
Issue Date: 02/09/2006                           Countersigned by: _____

WC 00 04 06

© 2002 National Council on Compensation Insurance, Inc.

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**     **WC 00 04 20**

## TERRORISM RISK INSURANCE ACT ENDORSEMENT

This endorsement addresses requirements of the Terrorism Risk Insurance Act of 2002.

**Definitions**

The definitions provided in this endorsement are based on the definitions in the Act and are intended to have the same meaning. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments.

"Act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements :

    a. The act is an act of terrorism.

    b. The act is violent or dangerous to human life, property or infrastructure.

    c. The act resulted in damage within the United States, or outside of the United States in the case of United States missions or certain air carriers or vessels.

    d. The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured terrorism or war loss" means any loss resulting from an act of terrorism (including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at United States missions or to certain air carriers or vessels.

"Insurer deductible" means:

    a. For the period beginning on November 26, 2002 and ending on December 31, 2002, an amount equal to 1% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding November 26, 2002.

    b. For the period beginning on January 1, 2003 and ending on December 31, 2003, an amount equal to 7% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2003.

    c. For the period beginning on January 1, 2004 and ending on December 31, 2004, an amount equal to 10% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2004.

    d. For the period beginning on January 1, 2005 and ending on December 31, 2005, an amount equal to 15% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2005.

## TERRORISM RISK INSURANCE ACT ENDORSEMENT

**mitation of Liability**

The Act may limit our liability to you under this policy. If annual aggregate insured terrorism or war losses of all insurers exceed $100,000,000,000 during the applicable period provided in the Act, and if we have met our insurer deductible, the amount we will pay for insured terrorism or war losses under this policy will be limited by the Act, as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1. Insured terrorism or war losses would be partially reimbursed by the United States Government under a formula established by the Act. Under this formula, the United States Government would pay 90% of our insured terrorism or war losses exceeding our insurer deductible.

2. The additional premium charged for the coverage this policy provides for insured terrorism or war losses is shown in Item 4 of the Information Page or the Schedule below.

### Schedule

| State | Rate per $100 of Remuneration |
|-------|-------------------------------|
| FL    | 3.00%                         |
| TX    | 2.40%                         |

---

Policy Number: WSLTHPE 000080 02  
Endorsement Effective: 01/01/2006  
Issue Date: 02/09/2006  

Insured: AEM, Inc.  
Coverage Provided by: SUA Insurance Company  
Countersigned by: _____

WC 00 04 20

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**　　　WC 00 03 01 A

(Ed. 4-89)

## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in Item 2 of the Schedule. Part One (Workers' Compensation Insurance) and Part Two (Employers' Liability Insurance) will apply as though the alternate employer is insured. If an entry is shown in Item 3 of the Schedule the insurance afforded by this endorsement applies only to work you perform under the contract or at the project named in the Schedule.

Under Part One (Workers' Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers' compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers' compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

Schedule

1. **Alternate Employer**　　　　　　　　　　　**Address**
   Any customer with whom the insured contractually
   agrees to provide this coverage.

2. **State of Special or Temporary Employment**
   Any State located in Item 3A. Of the Information Page.

3. **Contract or Project**
   Any contract between the insured and their customer
   which provides this coverage.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: WSLTHPE 000080 02　　　　Insured: AEM, Inc.

Endorsement Effective: 01/01/2006　　　　Coverage Provided by: SUA Insurance Company

Issue Date: 02/08/2006　　　　　　　　　Countersigned by: _____

WC 00 03 01 A
(Ed. 4-89)

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

**WC 00 04 22**

(Ed. 1-06)

### FOREIGN TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of foreign terrorism.

Your policy provides coverage for workers compensation losses caused by acts of foreign terrorism, including workers compensation benefit obligations dictated by state law.  Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

For purposes of this endorsement, an "act of foreign terrorism" is defined as:
  a.  Any act that is violent or dangerous to human life, property or infrastructure; and
  b.  The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers compensation losses caused by an act of foreign terrorism is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate per $100 of payroll |
|-------|--------------------------|
| FL    | *Please refer to the Schedule of Operations. |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: WSLTHPE 000080 02          Insured: AEM, Inc.

Endorsement Effective: 01/01/2006          Coverage Provided by: SUA Insurance Company

Issue Date: 06/13/2006                            Countersigned by:

WC 00 04 22
(Ed. 1-06)

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

WC 09 03 03

Standard

(Ed. 8-05)

## FLORIDA EMPLOYERS LIABILITY COVERAGE ENDORSEMENT

C.   Exclusion 5, Section C. of Part Two of the policy, is replaced by following:

This insurance does not cover

5.   bodily injury intentionally caused or aggravated by you or which is the result of your engaging in

conduct equivalent to an intentional tort, however defined, or other tortious conduct, such that you lose your immunity from civil liability under the workers compensation laws.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: WSLTHPE 000080 02     Insured: AEM, Inc.

Endorsement Effective: 01/01/2006     Coverage Provided by: SUA Insurance Company

Issue Date: 02/14/2006     Countersigned by: _____

WC 09 03 03
(Ed. 8-05)

© National Council on Compensation Insurance, Inc.

09/25/2002   22:01   4074269363                    BRIANA KARSON                              PAGE   20

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**          WC 42 03 01 F

(Ed. 1-00)

## TEXAS AMENDATORY ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page. ·

### GENERAL SECTION

B.  **Who is Insured is amended to read:**
You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership or joint venture, and if you are one of its partners or members, you are insured, but only in your capacity as an employer of the partnership's or joint venture's employees.

D.  **State is amended to read:**
State means any state or territory of the United States of America, and the District of Columbia.

### PART ONE—WORKERS COMPENSATION INSURANCE

E.  **Other Insurance is amended by adding this sentence:**
This Section only applies if you have other insurance or are self-insured for the same loss.

F.  **Payments You Must Make**
This Section is amended by deleting the words "workers compensation" from number 4.

H.  **Statutory Provisions**
This Section is amended by deleting the words "after an injury occurs" from number 2.

### PART TWO—EMPLOYERS LIABILITY INSURANCE

C.  **Exclusions**
Sections 2 and 3 are amended to add:
This exclusion does not apply unless the violation of law caused or contributed to the bodily injury.
Section 6 is amended to read:
6.   bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America, Mexico or Canada who is temporarily outside these countries.

D.  **We Will Defend**
This Section is amended by deleting the last sentence.

### PART FOUR—YOUR DUTIES IF INJURY OCCURS

Number 6 of this part is amended to read:
6.   Texas law allows you to make weekly payments to an injured employee in certain instances. Unless authorized by law, do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

WC 42 03 01 F

(Ed. 1-00)

### PART FIVE—PREMIUM

A. **Our Manuals is amended by adding this sentence:**
In this part, "our manuals" means manuals approved or prescribed by the Texas Department of Insurance.

C. **Remuneration**
Number 2 is amended to read:
2. All other persons engaged in work that would make us liable under Part One (Workers Compensation Insurance) of this policy. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured workers compensation insurance.

E. **Final Premium**
Number 2 is amended to read:
2. If you cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

### PART SIX—CONDITIONS

A. **Inspection is amended by adding this sentence:**
Your failure to comply with the safety recommendations made as a result of an inspection may cause the policy to be cancelled by us.

C. **Transfer of Your Rights and Duties is amended to read:**
Your rights and duties under this policy may not be transferred without our written consent. If you die, coverage will be provided for your surviving spouse or your legal representative. This applies only with respect to their acting in the capacity as an employer and only for the workplaces listed in Items 1 and 4 on the Information Page.

D. **Cancellation is amended to read:**
1. You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.
2. We may cancel this policy. We may also decline to renew it. We must give you written notice of cancellation or nonrenewal. That notice will be sent certified mail or delivered to you in person. A copy of the written notice will be sent to the Texas Workers' Compensation Commission.
3. Notice of cancellation or nonrenewal must be sent to you not later than the 30th day before the date on which the cancellation or nonrenewal becomes effective, except that we may send the notice not later than the 10th day before the date on which the cancellation or nonrenewal becomes effective if we cancel or do not renew because of:
   a. Fraud in obtaining coverage;
   b. Misrepresentation of the amount of payroll for purposes of premium calculation;
   c. Failure to pay a premium when payment was due;
   d. An increase in the hazard for which you seek coverage that results from an action or omission and that would produce an increase in the rate, including an increase because of failure to comply with reasonable recommendations for loss control or to comply with a reasonable period with recommendations designed to reduce a hazard that is under your control;
   e. A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the law, or would be hazardous to the interests of subscribers, creditors, or the general public.
4. If another insurance company notifies the Texas Workers' Compensation Commission that it is insuring you as an employer, such notice shall be a cancellation of this policy effective when the other policy starts.

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**　　　**WC 42 03 01 F**

(Ed. 1-00)

## PART SEVEN—OUR DUTY TO YOU FOR CLAIM NOTIFICATION

**A. Claims Notification**

We are required to notify you of any claim that is filed against your policy. Thereafter, we shall notify you of any proposal to settle a claim or, on receipt of a written request from you, of any administrative or judicial proceeding relating to the resolution of a claim, including a benefit review conference conducted by the Texas Workers' Compensation Commission. You may, in writing, elect to waive this notification requirement.

We shall, on the written request from you, provide you with a list of claims charged against your policy, payments made and reserves established on each claim, and a statement explaining the effect of claims on your premium rates. We must furnish the requested information to you in writing no later than the 30th day after the date we receive your request. The information is considered to be provided on the date the information is received by the United States Postal Service or is personally delivered.

COMPLAINT NOTICE: SHOULD ANY DISPUTE ARISE ABOUT YOUR PREMIUM OR ABOUT A CLAIM THAT YOU HAVE FILED, CONTACT THE AGENT OR WRITE TO THE COMPANY THAT ISSUED THE POLICY. IF THE PROBLEM IS NOT RESOLVED, YOU MAY ALSO WRITE THE TEXAS DEPARTMENT OF INSURANCE, P.O. BOX 149091, AUSTIN, TEXAS 78714-9091, FAX # (512) 475-1771. THIS NOTICE OF COMPLAINT PROCEDURE IS FOR INFORMATION ONLY AND DOES NOT BECOME A PART OR CONDITION OF THIS POLICY.

---

Policy Number: WSLTHPE 000080 02　　　　　Insured: AEM, Inc.

Endorsement Effective: 09/24/2006　　　　　Coverage Provided by: SUA Insurance Company

Issue Date: 12/12/2006　　　　　　　　　　　Countersigned by: _____

WC 42 03 01 F
(Ed. 1-00)

09/25/2002  22:01    4074269363                    BRIANA  KARSON

PAGE  23

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

WC 42 04 07

(Ed. 3-02)

### TEXAS - AUDIT PREMIUM AND
### RETROSPECTIVE PREMIUM ENDORSEMENT

Section D of Part Five of the policy is replaced by the following provision:

### PART FIVE - PREMIUM

#### D. Premium Payments

You will pay all premium when due.  You will pay the premium even if part or all of a workers' compensation law is not valid.  The billing statement or invoice for audit additional premiums and/or retrospective additional premiums establishes the date that the premium is due.

---

Policy Number:  WSLTHPE 000080 02         Insured:  AEM, Inc.

Endorsement Effective:  01/01/2006         Coverage Provided by:  SUA Insurance Company

Issue Date: 12/12/2006                     Countersigned by: _____

WC 42 04 07
(Ed. 3-02)

## Standard Workers' Compensation
## and Employers' Liability Policy

Policy Number: WSLTHPE 000080 02
Policy Period: 1/1/2006 to 1/1/2007
Coverage by: SUA Insurance Company
Producer Id: 2 / 8
Prev. Coverage: None
Carrier Id: 33514

| NAME AND ADDRESS OF INSURED | AGENT |
|---|---|
| 1. AEM, Inc.<br>8095 NW 12th St<br>Suite 301<br>Miami, FL 33126- | Lighthouse, LLC<br>301 East Pine Street, Ste 350<br>Orlando, FL 32801- |

FEIN: 59-2720545.

Locations - All usual work places of the insured at or from which operations covered by this policy are conducted at the above address unless otherwise stated herein:
See Attached Schedule.

Policy Page: 464

Schedule Page: 139 of 140

## SCHEDULE OF OPERATIONS

| St | Loc | Code No. | | Classifications | Prem Basis Total-Est. Ann. Remun | Rate Per $100 Remun | Est Annual Premium |
|---|---|---|---|---|---|---|---|
| FL | 4XD | 8232 | A | Added Effect: 1/1/2006<br>LUMBERYARD – NEW MATERIALS ONLY: ALL OTHER EMPLOYEES & YARD, WAREHOUSE, DRIVERS. | 0 | 8.24 | 0 |
| | 4XT | 8082 | A | Added Effect: 1/1/2006<br>RESTAURANT NOC. | 0 | 5.12 | 0 |
| | | | | Manual Premium | | | 13,975,203 |
| | | | | Increased EL limits premium Subject to Minimum | | | 195,653 |
| | | | | Safety Credit | | -2.00 | -283,417 |
| | | | | Drug Free Workplace Program Credit | | -5.00 | -694,372 |
| | | | | Subject Premium | | | 13,193,067 |
| | | | | Modified Premium | | | 13,193,067 |
| | | | | Standard Premium | | | 13,193,067 |
| | | | | Subtotal (Period Level) | | | 13,193,067 |
| FL | | | | Large Deductible Credit    70.921% | | | -9,356,655 |
| | | | | TRIA Premium - Payroll Based | 241,920,359 | 0.03 | 72,576 |
| | | | | Expense Constant | | | 200 |
| | | | | Subtotal (State Level) | | | 3,909,188 |
| TX | 4X8 | 8832 | A | Added Effect: 9/24/2006<br>Deleted Effect: 12/7/2006<br>BLOOD BANKS | 0 | 0.75 | 0 |
| | 4x7 | 8832 | A | Added Effect: 10/1/2006<br>Deleted Effect: 12/7/2006<br>BLOOD BANKS | 0 | 0.75 | 0 |

WC 00 00 SO
Issue Date: 12/12/2006
Copyright 1987 National Council on Compensation Insurance                    Original

Standard Workers' Compensation
and Employers' Liability Policy

Policy Number: WSLTHPB 000080 02
Policy Period: 1/1/2006 to 1/1/2007
Coverage by: SUA Insurance Company
Producer Id: 2 / 8
Prev. Coverage: None
Carrier Id: 33514

| NAME AND ADDRESS OF INSURED | AGENT |
|---|---|
| 1. AEM, Inc.<br>8095 NW 12th St<br>Suite 301<br>Miami, FL 33126- | Lighthouse, LLC<br>301 East Pine Street, Ste 350<br>Orlando, FL 32801- |

FEIN: 59-2720545

Locations - All usual work places of the insured at or from which operations covered by this policy are conducted at the above address unless otherwise stated herein: See Attached Schedule.

Policy Page: 465                                                                    Schedule Page: 140 of 140

## SCHEDULE   OF   OPERATIONS

| St | Loc | Code No. Classifications | | Prem Basis Total-Est. Ann. Remun | Rate Per $100 Remun | Est Annual Premium |
|---|---|---|---|---|---|---|
| | | | Estimated Annual Premium | | | 3,909,188 |
| | | | TOTAL | | | 3,909,188 |

WC 00 00 SO
Issue Date:  12/12/2006
Copyright 1987 National Council on Compensation Insurance                    Original

# EXHIBIT 2

# RENT-A-CAPTIVE SERVICE AGREEMENT

Between

## AEM, Inc. dba Mirabilis HR
8095 NW 12th Street
Doral, FL 33126

(hereinafter referred to as "Insured")

and

## UNIVERSAL RE-INSURANCE COMPANY LIMITED,
a Bermuda Corporation of Hamilton, Bermuda
(hereinafter referred to as "Universal")

### Preamble

The purpose of this agreement is to set forth the terms and conditions to which both parties, ie. Universal and the Insured, will adhere to during the term of Policy No. AEM 1160, issued by Universal International Reinsurance Company Ltd.

This Policy is entered into by Universal International Insurance Company Limited as agent and manager on behalf of a Segregated Account identified as TBD. This account is a Segregated Account pursuant to the Universal International Re-Insurance Act 2001, a Private Act of the Bermuda Legislature. Accordingly the liability of the insurer in relation to this policy is limited to the assets held in such Segregated Account and is not otherwise a liability of Universal International Insurance Company Limited or of any other segregated account managed by Universal International Insurance Company Limited.

An additional purpose is to provide the means by which the dividend arising from the above policy may be returned to the insured.

## ARTICLE I

### Effective Date and Payment Terms

This agreement shall become effective January 1, 2006 on an annual installment basis.

## ARTICLE II

### Consideration

In consideration of their respective commitments and covenants hereinafter contained, Universal and The Insured agree as follows:

A.   Universal will enter into the Insurance Contract specified in the preamble and shall:

    1.   Provide quarterly financial statements under this agreement to The Insured. The statements shall include:

        a.   All premiums receivable and paid to Universal under the Insurance Contract; and

        b.   All losses paid, payable and recoverable under the Insurance Contract; and

        c.   A quarterly statement of interest earned on net funds held by Universal under the program described in this Agreement.

    2.   Provide adequate bordereau and banking records to document the transactions under this agreement.

    3.   Pay to The Insured any ultimate dividends on the business which is the subject matter of the Insurance Contract. The dividend shall be determined as in Article III.

B.   The Insured shall:

    1.   Pay Universal as compensation for all services provided under this agreement a fee of 2.5%, ($170,319.00) based on a $6,812,760.00 Aggregate Limit, fully earned. In the event this agreement is non-renewed, Universal shall be entitled to an annual fee of 1% based on funds left in its fiduciary account.

## ARTICLE III

## APPLICATION OF PLANS ADMINISTRATED

Notwithstanding the premiums stipulated under policies administered under this agreement, it is agreed that the premium for all Policies shall be determined in accordance with ARTICLE III of this agreement. The final premiums shall be the basic premium stated in the Declarations plus the retrospective premium under the Retrospective Plan established hereunder;

## RETROSPECTIVE PREMIUM

The retrospective premium shall be equal to the sum of all payments due from the Company to the Named Insured and all amounts known to be outstanding in respect of claims which are the subject of this insurance, including damages and claim expenses. In no event shall the amount of the retrospective premium exceed the Company's aggregate limit of Liability stated in the Declarations.

The retrospective premium may be calculated by the Company at any time and payment thereof by the Insured to the Company shall be a condition precedent to the Company paying claims due to the Insured. The Company hereby acknowledges receipt of the amount of $6,812,760 in payment of advance premium for retrospective premium which may fall due hereunder. The Insured may make such further payments of advance premium to the Company as may be agreed from time to time between the Company and the Insured and evidenced by endorsement to the appropriate policy.

In the event that all claims made against the Insured during the policy period which would involve the liability of the Company have been settled, and provided that the Named Insured states in writing that no further Liability present or future in respect of this Policy shall attach against the Company, then within thirty days from the end of the policy period or at such date as the above conditions have been met, the Company shall make a final premium calculation and shall return to the Named Insured that portion of the advance premium paid plus interest thereon at the prevailing rates earned by the Company from the time of payment by the Named Insured to the Company until return by the Company to the Named Insured.

This agreement and all policies administered under this agreement are subject to a limitation of liability.

## LIMITATION OF LIABILITY

Notwithstanding anything to the contrary in this Policy or any other endorsement thereto, the Company's liability hereon shall be limited to the aggregate amount of retrospective premium paid by the Named Insured to the Company plus the amount of interest, if any, earned by the Company on such amounts.

## ARTICLE IV

### DIVIDEND FORMULA

Universal, in consultation with The Insured and Primary Insurance Carrier, will mutually arrive at the Ultimate Dividend to be declared. The exercise will include an analysis of paid claims, outstanding reserves and IBNR factor plus earned premiums and accrued investment income. This calculation will be done no later than 180 days after expiration and upon receipt of the necessary release form, Universal will issue the declared dividend.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed by their offices or agents thereunto duly authorized as of the

_____ day of _____ 200_ in Hamilton, Bermuda

_____

Universal Re-Insurance Company Limited

Attest: _____

_____

The Insured

Attest: _____