**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| **MIRABILIS VENTURES, INC.**, a Nevada Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 6:10 CV-737-OR-18KRS |
| v. | ) ) | |
| **SPECIALTY UNDERWRITERS' ALLIANCE INSURANCE COMPANY, a/k/a SUA INSURANCE COMPANY**, an Illinois Corporation, and **UNIVERSAL RE-INSURANCE COMPANY, LIMITED**, a Bermuda corporation, | ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| _____ | ) ) | |
| **CASTLEPOINT NATIONAL INSURANCE COMPANY, f/k/a SUA INSURANCE COMPANY,** an Illinois Corporation | ) ) ) ) ) | |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| **MIRABILIS VENTURES, INC.**, a Nevada Corporation, | ) ) ) | |
| Counter-Defendant. | ) ) | |
| _____ | ) | |

**CASTLEPOINT NATIONAL INSURANCE COMPANY, f/k/a SUA INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTER-CLAIMS AND DEMAND FOR JURY TRIAL**

NOW COMES Defendant/Counter-Plaintiff, CastlePoint National Insurance Company, f/k/a SUA Insurance Company, sued as Specialty Underwriters' Alliance Insurance Company a/k/a SUA Insurance Company ("SUA"), through its undersigned counsel, and pursuant to Rules

7 and 8 of the Federal Rules of Civil Procedure, hereby files its Answer and Affirmative Defenses to the claims made against it by the Plaintiff Mirabilis Ventures, Inc.; pursuant to Rule 13 of the Federal Rules of Civil Procedure, hereby files its Counterclaims against Plaintiff; and pursuant to Rule 38, demands a trial by jury on all issues so triable.  In support thereof, SUA states as follows:

1.      This is an action between corporations domiciled in different states and a foreign country for damages exceeding $75,000.00, exclusive of interest, costs, and attorneys' fees, and is within the jurisdiction of the Court pursuant to 28 USCA §1332.

**ANSWER:   Admitted**.

2.      Mirabilis is a Nevada corporation whose principal place of business is in Maitland, Orange County, Florida. Mirabilis owns AEM, Inc., with which it has filed a joint plan of liquidation in consolidated Chapter 11 bankruptcy proceedings) The Plan vests capacity in Mirabilis to enforce all legal rights of AEM, Inc., at the direction of the Liquidating Agent, R.W. Cuthill, Mirabilis' president. Mr. Cuthill has authorized the prosecution of this action by Mirabilis, the real party in interest, for and on behalf of AEM, an inactive Florida corporation whose principal place of business was at all material times M Orlando, Orange County, Florida.

**ANSWER:   SUA is without sufficient knowledge or information to admit or deny each and every allegation contained in Paragraph 2 of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded.  For the purposes of this pleading, SUA refers to Mirabilis and AEM, Inc. jointly as "Mirabilis."**

3.      SUA is an Illinois corporation whose principal place of business is in Chicago, Cook County, Illinois.

**ANSWER:   SUA denies that Mirabilis properly named SUA in its Complaint, namely, Specialty Underwriters' Alliance Insurance Company a/k/a SUA Insurance Company.**

**Without waiving said denial, SUA admits that CastlePoint National Insurance Company, f/k/a SUA Insurance Company, is an Illinois corporation whose principle place of business is in Chicago, Cook County, Illinois.**

4.     Universal is a Bermuda corporation whose principal place of business is in Hamilton, Pembroke Parish, Bermuda.

**ANSWER:     SUA is without sufficient knowledge or information to admit or deny each and every allegation contained in Paragraph 4 of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded**.

5.     Venue in this Court is appropriate pursuant to 28 USCA §1391 in that a substantial part of the events or omissions giving rise to AEM's claims occurred in this judicial district.

**ANSWER:     It is admitted that this Court may be an appropriate venue pursuant to 28 USCA §1391; however, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained in Paragraph 5 of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded.**

6.     On or about 1 January 2006, SUA issued AEM workers' compensation and employers' liability policy number WSLTHPE000080 02 (02 policy). AEM does not have a complete copy of the 02 policy; the partial copy it has is attached as exhibit 1. The 02 policy is a loss-sensitive, high deductible policy applied for by, and delivered to, AEM in Florida.

**ANSWER:     It is admitted that SUA issued the worker's compensation and employer liability policy number WSLTHPE000080 02 ("02 Policy") attached hereto, incorporated herein and marked as *Exhibits A1-A6*.  The 02 Policy speaks for itself and the remaining allegations are improper editorializations regarding the policy and/or are legal conclusions to which no response is required.  To the extent a response is required, SUA admits that the policy was delivered to AEM in Florida, and denies the remaining allegations in Paragraph**

3

**6 of Plaintiff's Complaint and strict proof of the allegations is demanded**.

7.       On or about 1 January 2007, SUA issued AEM workers' compensation and employers' liability policy number WSLTHPE000080 03 (03 policy). AEM does not have a copy of the 03 policy. The 03 policy is a loss-sensitive, high deductible policy applied for by, and delivered to, AEM in Florida.

**ANSWER:    It is admitted that SUA issued the worker's compensation and employer liability policy number WSLTHPE000080 03 ("03 Policy") attached hereto, incorporated herein and marked as *Exhibits B1-B5*.  The 03 Policy speaks for itself and the remaining allegations are improper editorializations regarding the policy and/or are legal conclusions to which no response is required.  To the extent a response is required, SUA admits that the 03 Policy was delivered to AEM in Florida, and denies the remaining allegations in Paragraph 7 of Plaintiff's Complaint and strict proof of the allegations is demanded**.

8.       In January 2006, Universal International Reinsurance Ltd. issued a deductible reimbursement policy to AEM to provide the latter with workers' compensation deductible reimbursement coverage for the deductible payments that would be due from AEM to SUA under the terms of the 02 policy.

**ANSWER:    This Paragraph of Plaintiff's Complaint is directed to Co-Defendant. To the extent a response is required, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained in Paragraph 8 of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded**.

9.       In January 2006, Universal contracted with AEM to provide the latter with rent-a-captive services in conjunction with the deductible reimbursement policy issued by Universal International Reinsurance Ltd. A copy of the rent-a-captive service agreement (agreement), applied for by and delivered to AEM in Florida, is attached as exhibit 2.

**ANSWER:     This Paragraph of Plaintiff's Complaint is directed to Co-Defendant. To the extent a response is required, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained in Paragraph 9 of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded.**

10.     Pursuant to the agreement, AEM deposited funds with Universal to provide the collateral to pay for AEM's deductible obligations under the 02 policy. Universal accepted AEM's deposits and acted as a fiduciary for the purpose of funding AEM's deductible obligations for workers' compensation claims submitted pursuant to the 02 policy.

**ANSWER:     This Paragraph of Plaintiff's Complaint is directed to Co-Defendant. To the extent a response is required, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained in Paragraph 10 of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded and strict proof of the allegations is demanded.**

11.     The 02 and 03 policies by law incorporate applicable regulatory rules promulgated by NCCI, the National Council on Compensation Insurance, the authorized ratemaking authority for Florida, including but not limited to the Florida State Special Audit Rules. These regulatory rules are thus part of the 02 and 03 policies by operation of law and impose rights and responsibilities on SUA, the insurer, and AEM, the insured.

**ANSWER:     The 02 Policy and the 03 Policy (referred to jointly herein as the "SUA Policies") speak for themselves.  SUA specifically denies that it violated, or was in breach of, any term or condition of the SUA Policies.  SUA specifically denies that it violated, or was in breach of, any applicable federal or state rules and regulations.  More specifically, SUA denies that it was in violation of the Florida State Special Audit Rules ("Florida Rules") as they existed at all relevant times to the extent that they are applicable to this**

5

litigation.  **The remaining allegations are improper editorializations regarding the policy and/or are legal conclusions to which no response is required.  To the extent a response is required, SUA denies the remaining allegations in Paragraph 11 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

12.     In accord with the terms of the 02 and 03 policies and the Florida State Special Audit Rules, SUA was required to have conducted an audit of AEM's business operations to determine AEM's actual workers' compensation exposure for each policy period to assess the actual amount of premium owed.

**ANSWER:     The SUA Policies and the Florida Special Audit Rules speak for themselves. SUA specifically denies that it violated, or was in breach of, any term or condition of the SUA Policies or the Florida Special Audit Rules as they existed at all relevant times to the extent that they are applicable to this litigation. The remaining allegations are improper editorializations regarding the policy and/or are legal conclusions to which no response is required.  To the extent a response is required, SUA denies the remaining allegations in Paragraph 12 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

13.     SUA, however, did not conduct the required audit and instead arbitrarily decided to impute AEM's exposure for each policy period on the basis that AEM had not supplied SUA with sufficient business records by which SUA could identify the exposures for the 02 and 03 policy periods.

**ANSWER:     SUA denies the allegations in Paragraph 13 of Plaintiff's Complaint and strict proof of the allegations is demanded**.

14.     SUA then billed AEM for additional premiums based upon its imputed audits. AEM disputed SUA's imputed audits and asked SUA to conduct a physical audit of AEM for both policy

terms so that SUA could determine the correct premiums owed, if any, for the 02 and 03 policy periods.

**ANSWER:     SUA denies the allegations in Paragraph 14 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

15.     SUA refused to conduct the audit, in violation of regulatory rule, and instead billed and tried to collect from AEM the additional premium SUA said was due as a result of its imputed audit. AEM disputed SUA's claim to additional premium.

**ANSWER:     SUA denies the allegations in Paragraph 15 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

16.     SUA then told Universal to remit to SUA $541,517.00 in collateral that AEM had deposited with Universal to cover AEM's deductible obligations, in partial satisfaction of SUA's premium bill that AEM disputed.

**ANSWER:     It is admitted that SUA properly applied $541,517.00 of the premium collateral held by SUA to partially fund the outstanding premium owed by Mirabilis.  It is denied that these proceeds were held by Universal.  SUA denies the remaining allegations of Paragraph 16 of Plaintiff's Complaint and strict proof of the allegations is demanded**.

17.     In response to SUA's demand, Universal remitted to SUA money in partial payment. of the disputed premium bill. At no time did Universal have AEM's authority to remit AEM's deductible funds to SUA to pay premium.

**ANSWER: It is specifically denied that SUA demanded that Universal remit to SUA money in partial payment of the disputed premium bill.  The remaining allegations are directed at the co-defendant.  To the extent a further response is required, SUA denies the remaining allegations of Paragraph 17 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

7

18.     In December 2008, AEM demanded that Universal account for all funds paid by AEM pursuant to the agreement. Universal ignored, and continues to ignore, AEM's demand.

**ANSWER:     The allegations in Paragraph 18 are directed at the co-defendant.  To the extent a response is required, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained in Paragraph 18 of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded**.

19.     AEM hired its own workers' compensation premium auditor to conduct a physical audit for both the 02 and 03 policies. The auditor determined, based on the physical audit that is required by regulatory rule, AEM was in fact due a refund of $3,350,663.00 for the 02 policy and $573,121.00 for the 03 policy. In September 2009, AEM demanded the return of its overpaid premium and again demanded that SUA conduct the premium audit required by regulatory rule.

**ANSWER:  It is admitted that AEM contacted SUA in September 2009 and wrongfully demanded a return of premium.  SUA specifically denies that Mirabilis is due a refund of $3,350,663.00 for the 02 Policy and $573,121 for the 03 Policy.  SUA specifically denies that the audit performed by the auditor hired by Mirabilis was a complete audit and was compliant with the SUA Policies, the Florida Rules, and standard GAAP rules and practices.  To the extent a further response is required, SUA denies the remaining allegations of Paragraph 19 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

20.     In October 2009, SUA's representative went to AEM's premises and was provided complete access to AEM's business records for the 02 and 03 policy periods and AEM's president and its auditor.

**ANSWER: SUA admits that several representatives from SUA went to Mirabilis' premises in October 2009.  SUA specifically denies that Mirabilis presented, or provided access to, all**

of the information which SUA previously requested of Mirabilis, prior to the October 2009 visit, and which SUA advised Mirabilis that SUA needed in order to perform a complete audit.  To the extent a further response is required, SUA denies the remaining allegations of Paragraph 20 of Plaintiff's Complaint and strict proof of the allegations is demanded.

21.     SUA thereafter refused to communicate with AEM regarding the results, if any, of its October 2009 re-audit of the 02 and 03 policies and has also refused to refund any amount of the premium AEM's auditor has determined AEM overpaid SUA.

**ANSWER: SUA specifically denies that it "refused to communicate" with Mirabilis regarding the results of its October 2009 audit.  SUA admits that it has not refunded any premium to Mirabilis because SUA specifically denies that it is required to refund anything to Mirabilis pursuant to the terms of the SUA Policies.  To the extent a further response is required, SUA denies the remaining allegations of Paragraph 21 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

22.     All conditions precedent to this action have either been performed or waived or have occurred.

**ANSWER:    The allegations in Paragraph 22 are legal conclusions to which no response is required.  To the extent a response is required, SUA denies the allegations in Paragraph 22 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

## Count I – Breach of Contract (SUA; 02 Policy)

23.     Mirabilis here realleges paragraphs 1-3; 5-6; 11-15, and 19-22.

**ANSWER:    SUA incorporates its answers to Paragraphs 1-3; 5-6; 11-15; and 19-22 of Plaintiff's Complaint as if those answers were fully set forth herein.**

24.     The 02 policy is a contract that contains the respective rights and responsibilities of SUA, as insurer, and AEM, as insured.

**ANSWER: The allegations in Paragraph 24 are legal conclusions to which no response is required.  To the extent a response is required, SUA admits the allegations in Paragraph 24 in Plaintiff's Complaint, but denies that AEM is the sole insured under the 02 Policy.**

25.    All applicable regulatory rules are by operation of law part of all workers' compensation policies issued for delivery to insureds in the State of Florida.

**ANSWER:  The allegations in Paragraph 25 are legal conclusions to which no response is required.  To the extent a response is required, SUA admits that it was at all times compliant with all applicable regulatory rules, and SUA denies the remaining allegations in Paragraph 25 of Plaintiff's Complaint and strict proof of the allegations is demanded**.

26.    SUA breached the 02 policy by failing to properly audit AEM; demanding and trying to collect excessive and insupportable premium; failing to bill AEM pursuant to the actual exposure determined by AEM's business activity during the 02 policy period, and failing to remit substantial overpayment of premium.

**ANSWER:    SUA denies the allegations in Paragraph 26 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

27.    As a result of SUA's breaches of contract, AEM and Mirabilis have been damaged. Plaintiff, Mirabilis Ventures, Inc., therefore demands judgment for damages against Defendant, Specialty Underwriters' Alliance Insurance Company, a/k/a SUA Insurance Company, in the principal amount of $3,350,663.00; interest; costs, and other appropriate relief.

**ANSWER:    SUA specifically denies that it breached any term or condition of the SUA Policies.   SUA specifically denies that Mirabilis has been damaged in any manner whatsoever.   To the extent a further response is required, SUA denies the remaining allegations in Paragraph 27 of Plaintiff's Complaint and strict proof of the allegations is demanded**.

WHEREFORE, and having fully answered Count I, SUA prays that this Honorable Court enter judgment in its favor and against Mirabilis as to Count I of Plaintiff's Complaint, and provide such other and further relief as this Court deems just and proper, including awarding SUA attorneys' fees and costs of defense relating to this litigation.

### Count II- Breach of Contract (SUA; 03 Policy)

28.     Mirabilis here realleges paragraphs 1-3; 5; 7; 11-15, and 19-22.

**ANSWER:    SUA incorporates its answers to Paragraphs 1-3; 5; 7; 11-15; and 19-22 of Plaintiff's Complaint as if those answers were fully set forth herein.**

29.     The 03 policy is a contract that contains the respective rights and responsibilities of SUA, as insurer, and AEM, as insured.

**ANSWER:    The SUA Policies speak for themselves.  The allegations in Paragraph 29 are improper editorializations regarding the SUA Policies and/or are legal conclusions to which no response is required.  To the extent a response is required, SUA admits the allegations in Paragraph 29 in Plaintiff's Complaint, but denies that AEM is the sole insured under the 03 Policy.**

30.     All applicable regulatory rules are by operation of law part of all workers' compensation policies issued for delivery to insureds in the State of Florida.

**ANSWER: The allegations in Paragraph 30 are legal conclusions to which no response is required.  To the extent a response is required, SUA admits that it was at all times compliant with all applicable regulatory rules, and SUA denies the remaining allegations in Paragraph 30 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

31.     SUA breached the 03 policy by failing to properly audit AEM; demanding and trying to collect excessive and insupportable premium; failing to bill AEM pursuant to the actual

exposure determined by AEM'S business activity during the 03 policy period, and failing to remit substantial overpayment of premium.

**ANSWER:    SUA denies the allegations in Paragraph 26 of Plaintiff's Complaint and strict proof of the allegations is demanded**.

32.      As a result of SUA's breaches of contract, AEM and Mirabilis have been damaged. Plaintiff, Mirabilis Ventures, Inc., therefore demands judgment for damages against Defendant, Specialty Underwriters' Alliance Insurance Company, a/k/a SUA. Insurance Company, in the principal amount of $573,121.00; interest; costs, and other appropriate relief.

**ANSWER: SUA specifically denies that it breached any term or condition of the SUA Policies.  SUA specifically denies that Mirabilis has been damaged in any manner whatsoever.  To the extent a further response is required, SUA denies the remaining allegations in Paragraph 32 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

WHEREFORE, and having fully answered Count II, SUA prays that this Honorable Court enter judgment in its favor and against Mirabilis as to Count II of Plaintiff's Complaint, and provide such other and further relief as this Court deems just and proper, including awarding SUA attorneys' fees and costs of defense relating to this litigation.

### Count III- Breach of Duty of Good Faith (SUA; 02 Policy)

33.      Mirabilis here realleges paragraphs 1-3; 5-6; 11-15, and 19-22.

**ANSWER:    SUA incorporates its answers to Paragraphs 1-3; 5-6; 11-15; and 19-22 of Plaintiff's Complaint as if those answers were fully set forth herein.**

34.      The 02 policy provides that SUA may investigate and settle workers' compensation claims brought pursuant to the 02 policy.

**ANSWER:    Admitted**.

12

35.     Since the 02 policy is a high-deductible, loss-sensitive policy, claims payments affect the premium and fees chargeable to AEM.

**ANSWER:     The SUA Policies speak for themselves.  The allegations in Paragraph 35 are improper editorializations regarding the policy and/or are legal conclusions to which no response is required.   To the extent a further response is required, SUA denies the remaining allegations in Paragraph 35 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

36.     Since the investigation and settlement of worker's compensation claims affected AEM's premium and fees, there is implied in the 02 policy a duty of good faith with respect to SUA's investigation and settlement of any claim presented pursuant to the 02 policy.

**ANSWER:     The SUA Policies speak for themselves.  The allegations in Paragraph 36 are improper editorializations regarding the policy and/or are legal conclusions to which no response is required.   To the extent a further response is required, SUA denies the remaining allegations in Paragraph 36 of Plaintiff's Complaint and strict proof of the allegations is demanded**.

37.     SUA breached its duty of good faith by investigating and settling the claims of workers who were not insured pursuant to the 02 policy.

**ANSWER:     SUA specifically denies that it breached any duty of good faith owed to Mirabilis at any time. As for the remaining allegations in Paragraph 37, those allegations are legal conclusions to which no response is required.  To the extent a further response is required, SUA denies the remaining allegations in Paragraph 37 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

38.     As a result of SUA's breach of its duty of good faith, AEM and Mirabilis have been damaged.

**ANSWER:     SUA specifically denies that it breached any duty owed to Mirabilis at any time, and further specifically denies that Mirabilis incurred any damages whatsoever.  To the extent a further response is required, SUA denies the remaining allegations in Paragraph 38 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

WHEREFORE, and having fully answered Count III, SUA prays that this Honorable Court enter judgment in its favor and against Mirabilis as to Count III of Plaintiff's Complaint, and provide such other and further relief as this Court deems just and proper, including awarding SUA attorneys' fees and costs of defense relating to this litigation.

### Count IV- Breach of Duty of Good Faith (SUA; 03 Policy)

39.     Mirabilis here realleges paragraphs 1-3; 5; 7; 11-15, and 19-22.

**ANSWER:     SUA incorporates its answers to Paragraphs 1-3; 5; 7; 11-15; and 19-22 of Plaintiff's Complaint as if those answers were fully set forth herein**.

40.     The 03 policy provides that SUA may investigate and settle workers' compensation claims brought pursuant to the 03 policy.

**ANSWER:     Admitted.**

41.     Since the 03 policy is a high-deductible, loss-sensitive policy, claims payments affect the premium and fees chargeable to AEM.

**ANSWER:     The SUA Policies speak for themselves.  The allegations in Paragraph 41 are improper editorializations regarding the policy and/or are legal conclusions to which no response is required.   To the extent a further response is required, SUA denies the remaining allegations in Paragraph 41 of Plaintiff's Complaint and strict proof of the allegations is demanded**.

42.     Since the investigation and settlement of worker's compensation claims affected AEM's premium and fees, there is implied in the 03 policy a duty of good faith with respect to SUA's investigation and settlement of any claim presented pursuant to the 03 policy.

**ANSWER:     The SUA Policies speak for themselves.  The allegations in Paragraph 42 are improper editorializations regarding the policy and/or are legal conclusions to which no response is required.   To the extent a further response is required, SUA denies the remaining allegations in Paragraph 42 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

43.     SUA breached its duty of good faith by investigating and settling the claims of workers who were not insured pursuant to the 03 policy.

**ANSWER:     SUA specifically denies that it breached any duty of good faith owed to Mirabilis at any time. As for the remaining allegations in Paragraph 43, those allegations are legal conclusions to which no response is required.  To the extent a further response is required, SUA denies the remaining allegations in Paragraph 43 of Plaintiff's Complaint and strict proof of the allegations is demanded.**

44.     As a result of SUA's breach of its duty of good faith, AEM and Mirabilis have been damaged.

**ANSWER:     SUA specifically denies that it breached any duty owed to Mirabilis at any time, and further specifically denies that Mirabilis incurred any damages whatsoever.  To the extent a further response is required, SUA denies the remaining allegations in Paragraph 44 of Plaintiff's Complaint and strict proof of the allegations is demanded**.

WHEREFORE, and having fully answered Count IV, SUA prays that this Honorable Court enter judgment in its favor and against Mirabilis as to Count IV of Plaintiff's Complaint, and provide such other and further relief as this Court deems just and proper, including awarding

SUA attorneys' fees and costs of defense relating to this litigation.

<u>**Count V- Breach of Contract (Universal)**</u>

45.     Mirabilis here realleges paragraphs 1-2; 4-6, and 8-22.

**ANSWER:     SUA incorporates its answers to Paragraphs 1-2; 4-6 and 8-22 of Plaintiff's Complaint as if those answers were fully set forth herein**.

46.     The agreement is a contract that contains the respective rights and responsibilities of Universal and AEM.

**ANSWER:     This Paragraph of Plaintiff's Complaint is directed to Co-Defendant. To the extent a response is required, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained this paragraph of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded.**

47.     Universal breached the agreement· by paying. SUA 'funds that AEM had deposited with Universal to cover AEM's deductible obligations, which funds were not to be used to pay premium, disputed or otherwise.

**ANSWER:     This Paragraph of Plaintiff's Complaint is directed to Co-Defendant. To the extent a response is required, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained this paragraph of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded.**

48.     As a result of Universal's breach of contract, AEM and Mirabilis have been damaged.

**ANSWER:     This Paragraph of Plaintiff's Complaint is directed to Co-Defendant. To the extent a response is required, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained this paragraph of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded.**

### Count VI- Conversion (Universal)

49.     Mirabilis here realleges paragraphs 1-2; 4-6, and 8-22.

**ANSWER:     SUA incorporates its answers to Paragraphs 1-2; 4-6 and 8-22 of Plaintiff's Complaint as if those answers were fully set forth herein**.

50.     In 2007, when it paid SUA funds that had been deposited by AEM with Universal for a particular purpose, Universal engaged in an act of dominion, wrongfully asserted, with respect to such funds in a manner wholly inconsistent with the agreement and AEM's ownership interest in such funds.

**ANSWER:     This Paragraph of Plaintiff's Complaint is directed to Co-Defendant. To the extent a response is required, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained this paragraph of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded.**

51.     In 2007, Universal converted $541,517.00 that AEM had deposited with Universal as collateral for AEM's deductible obligations, thus depriving AEM of its property rights for a permanent and indefinite period.

**ANSWER:     This Paragraph of Plaintiff's Complaint is directed to Co-Defendant. To the extent a response is required, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained this paragraph of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded.**

52.     Universal refuses to reimburse or even account for the funds of which AEM has been wrongfully divested and its actions, in gross derogation of its contractual authority and disregard of AEM's rights, warrant the imposition of punitive damages.

**ANSWER:     This Paragraph of Plaintiff's Complaint is directed to Co-Defendant. To the extent a response is required, SUA is without sufficient knowledge or information to admit**

or deny each and every allegation contained this paragraph of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded.

<u>**Count VII- Breach of Fiduciary Duty (Universal)**</u>

53.     Mirabilis here realleges paragraphs 1-2; 4-6, and 8-22.

**ANSWER:     SUA incorporates its answers to Paragraphs 1-2; 4-6 and 8-22 of Plaintiff's Complaint as if those answers were fully set forth herein**

54.     AEM depended on Universal to protect the funds it had deposited with Universal so that the funds would be used to satisfy AEM's deductible obligations under the 02 policy.

**ANSWER:     This Paragraph of Plaintiff's Complaint is directed to Co-Defendant. To the extent a response is required, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained this paragraph of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded.**

55.     Universal induced AEM's trust, and AEM in fact reposed its trust in Universal, and it deposited funds with Universal for the express and sole purpose of covering its deductible obligations to SUA.

**ANSWER:     This Paragraph of Plaintiff's Complaint is directed to Co-Defendant. To the extent a response is required, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained this paragraph of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded**

56.     Universal breached the fiduciary duty it owed to AEM by impermissibly, and without authorization, paying AEM's money to another party for a purpose not agreed by the their agreement.  Universal's actions, in gross derogation of its contractual authority and disregard of AEM's rights, warrant the imposition of punitive damages.

**ANSWER:     This Paragraph of Plaintiff's Complaint is directed to Co-Defendant. To the extent a response is required, SUA is without sufficient knowledge or information to admit or deny each and every allegation contained this paragraph of Plaintiff's Complaint and, therefore the allegations are denied and strict proof of the allegations is demanded.**

## AFFIRMATIVE DEFENSES

### First Affirmative Defense – Insured Locations

1.      The SUA Policies state under General Section, Part B., titled "Who is Insured," as follows:

> You are insured if you are an employer named in Item 1 of the Information Page.  If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

2.      The SUA Policies state under General Section, Part E., titled "Locations," as follows:

> This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

3.      The SUA Policies state under Item 1 of the Information Page as follows:

> AEM, Inc.
> 8095 NW 12th St
> Suite 301
> Miami, FL 33126
> FEIN 592720545
> Locations – All usual work places of the insured at or from which operations covered by this policy are conducted at the above address unless otherwise stated herein:  See Attached Schedule.

4.      An Attached Schedule to the 02 Policy includes three-hundred twenty-one (321) pages, titled "Additional Location Schedule" consisting of four (4) additional locations per page.

5.      In addition, an Attached Schedule to the 02 Policy includes one-hundred forty-one

(141) pages, titled "Schedule of Operations" consisting of at least sixteen (16) additional locations per page.

6.      An Attached Schedule to the 03 Policy includes two-hundred eighty (280) pages, titled "Additional Location Schedule" consisting of four (4) additional locations per page.

7.      In addition, an Attached Schedule to the 03 Policy includes one-hundred twenty-three (123) pages, titled "Schedule of Operations" consisting of at least sixteen (16) additional locations per page.

8.      The information set forth in the Additional Location Schedules and the Schedules of Operation was provided to SUA by Mirabilis.  (The Additional Location Schedules in the SUA Policies and the Schedules of Operations in the SUA Policies are herein referred to collectively as "Additional Insured Locations").

9.      Mirabilis provided SUA with the information set forth in the Additional Insured Locations with the intent that those Additional Insured Locations be covered under the SUA Policies; those Locations were covered and both Mirabilis and SUA acted at all relevant times as if they were covered.

10.      Accordingly, the SUA Policies specifically provide coverage to the named insured at all of the specific Additional Insured Locations as set forth in the SUA Policies.

11.      The claims made against SUA in the Mirabilis Complaint do not consider, take into account, or properly include the terms of the Additional Insured Locations, and, accordingly, the claims made by Mirabilis must fail.

### Second Affirmative Defense – Alternate Employer Endorsement

12.      SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

13.      In addition to coverage provided by the SUA Policies to the named insured at all

of the Additional Insured Locations, the SUA Policies also included an endorsement titled "Alternate Employer Endorsement."  The "Alternate Employer Endorsement" states, in relevant part, as follows:

> This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in Item 2 of the Schedule.  Part One (Workers' Compensation Insurance) and Part Two (Employers' Liability Insurance) will apply as though the alternate employer is insured.  If an entry is shown in Item 3 of the Schedule the insurance afforded by this endorsement applies only to work you perform under the contract or at the project named in the Schedule.
> …
> Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

14.     The Alternate Employer Endorsement goes on to include the following Schedule:

-1. **Alternate Employer**
    Any customer with whom the insured contractually agrees to provide this coverage.
-2. **State of Special or Temporary Employment**
    Any State located in item 3A. of the Information Page
-3. **Contract or Project**
    Any contract between the insured and their customer which provides this coverage.

15.     Thus, the SUA Policies provide coverage in accordance with the Alternate Employer Endorsements to the SUA Policies.

16.     Accordingly, SUA was, and is, entitled to collect premium from Mirabilis for coverage provided by the Alternate Employer Endorsements in accordance with those endorsements and in accordance with the terms of the SUA Policies.

17.     The claims made against SUA in the Mirabilis Complaint do not consider, take into account, or properly include the terms of the Alternate Employer Endorsement, and, accordingly, the claims made by Mirabilis must fail.

21

### Third Affirmative Defense - Estoppel

18.     SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

19.     Mirabilis, by its own volitions, representations and its own conduct, requested coverage for each and every of the Additional Insured Locations and requested coverage pursuant to the Alternate Employer Endorsement.

20.     Mirabilis is now claiming in its Complaint that over 75% of the insured locations as listed in the Additional Insured Locations were not to have been part of the insurable interest that Mirabilis presented to SUA for coverage.

21.     In addition, Mirabilis continued to pay weekly premium payments for over a full policy term based on actual and estimated payroll calculations for each and every Additional Insured Locations in the SUA Policies that Mirabilis submitted to SUA.

22.     Further, Mirabilis tendered worker's compensation claims to SUA for handling and payment under the SUA Policies that Mirabilis represented were covered by the SUA Policies.  These are the very same claims that Mirabilis is now arguing should not have been covered by the SUA Policies.

23.     SUA, in fact, managed the claims tendered by Mirabilis to SUA and paid-out on those claims as was required by the terms of the SUA Policies and applicable laws.

24.     At all times, SUA relied upon the representations made to it by Mirabilis regarding Mirabilis' insurable interests and regarding the claims tendered by Mirabilis to SUA arising under the SUA Policies.

25.     To the extent Mirabilis is now arguing that it did not have an insurable interest in various Additional Insured Locations and/or that there was no coverage for those locations under the SUA policies, SUA has been prejudiced and has suffered direct and proximate damages as a

result of its reliance upon Mirabilis' affirmative and tacit representations.

26.    Accordingly, Mirabilis should be estopped from now claiming that over 75% of the Additional Insured Locations that it presented to SUA for coverage under the SUA Policies were not to have been covered by the SUA Policies.

### Fourth Affirmative Defense – Premium Calculations

27.    SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

28.    In the SUA Policies, Part Five, Section A states as follows:

> All premium for this policy will be determined by our manuals of rules, rating plans and classifica-tions [sic.].  We may change our manuals and apply the changes to this policy if authorized by law or a gov-ernmental [sic.] agency regulating this insurance.

29.    Upon information and belief, Mirabilis' auditor did not utilize the proper manuals and rules in calculating Mirabilis' demanded return of premium and, in addition, Mirabilis' auditor failed to follow proper GAAP accounting rules and principles in performing its audit.

30.    In accordance with the terms of the SUA Policies and professional standards of practice, Mirabilis' claim for a premium refund is invalid.

### Fifth Affirmative Defense – Failure to Cooperate

31.    SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

32.    In the SUA Policies, Part Five Section E states as follows, in relevant part:

> The premium shown on the Information Page, schedules, and endorsements is an estimate.   The final premium will be determined after the policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy.  If the final premium is more than the premium you paid to us, you must pay us the bal-ance.  [sic.]  If it is less, we will refund the balance to you [sic.] The final premium will not be  less  than  the  highest  minimum  premium  for  the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise:

-1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force.  Final premium will not be less than the pro rata share of the minimum premium….

33.    In the SUA Policies, Part Five Section F states as follows:

You will keep records of information needed to compute the premium.  You will provide us with copies of those records when we ask for them.

34.    In the SUA Policies, Part Five Section G states as follows:

You will let us examine and audit all your records that relate to this policy.  These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data.  We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends.  Information developed by audit will be used to determine final premium.  Insurance rate service organizations have the same rights we have under this provision.

35.    SUA attempted to conduct an audit on the SUA Policies in April 2007.

36.    SUA made repeated requests of Mirabilis for records such as those set forth in Part Five, Sections F and G in the SUA Policies.

37.    Mirabilis failed to cooperate with SUA by failing to fully comply with SUA's requests for records.

38.    Mirabilis has continued to refuse to cooperate with SUA by failing to tender records to SUA in support of SUA's attempted audit of the SUA Policies.

39.    Plaintiff's failure to cooperate with SUA constitutes a material breach of the SUA Policies.

40.    Because Mirabilis first perpetrated an incurable material breach of the SUA

Policies and continues to be in breach of the SUA Policies, Mirabilis is barred from now making claims against SUA pursuant to the SUA Policies.

Sixth Affirmative Defense – Failure to State a Claim

41.     Mirabilis' Complaint fails to state a cause of action upon which relief may be granted.

42.     Mirabilis may not maintain this action against SUA because Mirabilis, itself, was first in breach of the SUA Policies.

43.     A party first-in-breach of a contract is not entitled to sue upon the contract until satisfying all of its obligations under the contract.

44.     Therefore, Counts I and II of Mirabilis' Complaint should be dismissed.

45.     In addition, because Counts III and IV of Mirabilis' Complaint are ancillary to, and dependent upon, a breach of contract claim, Counts III and IV should also be dismissed because Mirabilis has failed to state a claim upon which relief can be grated pursuant to F.R. Civ. P. Rule 12(b)(6).

Seventh Affirmative Defense – Set-off

46.     SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

47.     As set forth in SUA's Counterclaim III (Breach of Contract), SUA is entitled to additional final estimated premium in the amount of $671,249.67.

48.     Paragraphs 83 through 176 in SUA's Counterclaims are hereby incorporated herein.

49.     To the extent that Mirabilis is entitled to recover against SUA based on the claims alleged in Mirabilis' Complaint, SUA is entitled to a set-off in the amount of $671,249.67 on any monetary award against SUA, or in the amount of the final calculated premium determined after

a full and final accounting is conducted in accordance with SUA's Counterclaim I.

Eighth Affirmative Defense – Laches

50.     SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

51.     The 02 Policy provided coverage from January 1, 2006 through January 1, 2007.

52.     In accordance with Part Five, Section G of the 02 Policy, SUA was only entitled to an audit up and until January 1, 2010.

53.     The 03 Policy provided coverage from January 1, 2007 and was effectively cancelled for Mirabilis' failure to pay premium on March 26, 2007.

54.     In accordance with Part Five, Section G, of the 03 Policy, SUA was only entitled to an audit up and until March 26, 2010.

55.     Mirabilis waited until May 12, 2010 to file this action.

56.     Accordingly, SUA's rights under the SUA Policies have been compromised as a result of Mirabilis' dilatory conduct in bringing this action, to the extent a court finds that SUA may not seek an equal and opposite adjudication of its rights relating to the very same conduct at issue in the Mirabilis' Complaint.

57.     Moreover, Mirabilis declared Chapter 11 Bankruptcy between the period from March 26, 2010 and May 12, 2010.

58.     As a result of Mirabilis' dilatory conduct any potential counterclaim by SUA against Mirabilis might be compromised to the extent that SUA may not seek an equal and opposite adjudication of its rights relating to the very same conduct at issue in the Mirabilis' Complaint.

59.     Inasmuch as Mirabilis unreasonably delayed in bringing its claims against SUA, Mirabilis' claims are barred by the doctrine of laches.

60.     Accordingly, judgment should be entered in favor of the SUA on all counts.

<u>Ninth Affirmative Defense – Waiver</u>

61.     SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

62.     In accordance with Mirabilis' course of conduct with SUA, Mirabilis at all times represented to SUA that Mirabilis had an insurable interest in all of the Additional Insured Locations.  In fact, Mirabilis, at all relevant times, acted as if all of the Additional Insured Locations were covered under the SUA Policies.

63.     At all relevant times, Mirabilis would have, and should have, known whether it wanted to limit its scope of insurance to less than those Additional Insured Locations that Mirabilis presented to SUA for coverage.

64.     If Mirabilis believed that the SUA Policies were only to cover a certain limited number of additional locations, particularly those which were (at some  particular point in time) listed directly on AEM, Inc.'s payroll, then Mirabilis should have, and should have, recognized the error when Mirabilis submitted weekly payroll reports to SUA.

65.     Instead, Mirabilis voluntarily submitted all Additional Insured Locations to SUA and requested coverage for those locations.

66.     Additionally, Mirabilis voluntarily submitted weekly payroll reports for all Additional Insured Locations throughout the entire term of the 02 Policy.

67.     At all relevant times, Mirabilis knew, or should have known, that it was being provided coverage under the SUA Policies for all Additional Insured Locations listed on the SUA Policies.

68.     SUA relied upon Mirabilis' voluntary and intentional representations and, in fact, covered claims tendered by Mirabilis under the SUA Policies.

69.     Accordingly, as Mirabilis knowingly and intentionally relinquished any right it may have had to object to the extent of coverage under the SUA policies, Mirabilis has waived any right to now (years after the fact) claim that the Additional Insured Locations that it submitted to SUA were not covered by the SUA Policies.

<u>Tenth Affirmative Defense – Confession of Illegality</u>

70.     SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

71.     Florida Statute §440.381(2) states as follows:

> Submission of an application that contains false, misleading, or incomplete information provided with the purpose of avoiding or reducing the amount of premiums for workers' compensation coverage is a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. The application must contain a statement that the filing of an application containing false, misleading, or incomplete information provided with the purpose of avoiding or reducing the amount of premiums for workers' compensation coverage is a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. The application must contain a sworn statement by the employer attesting to the accuracy of the information submitted and acknowledging the provisions of former s. 440.37(4). The application must contain a sworn statement by the agent attesting that the agent explained to the employer or officer the classification codes that are used for premium calculations.

72.     Accordingly, for Mirabilis to now claim that the SUA Policies cover less that all of the Additional Insured Locations that Mirabilis tendered to SUA for coverage would constitute a crime pursuant to Florida Law pursuant to §440.381(2).

73.     Therefore, in order for Mirabilis to proceed on its claims against SUA and should Mirabilis be successful in its claims against SUA, Mirabilis will be in *de facto* violation of §440.381(2).

74.     Accordingly, Mirabilis should be estopped from taking a position in this litigation

that would effectively act as its consent to a criminal violation.  In other words, Mirabilis should not be permitted to benefit in a civil litigation for an admittedly criminal act.

75.     Mirabilis' claims against SUA should be dismissed as a matter of law.

<u>Eleventh Affirmative Defense – Public Policy</u>

76.     SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

77.     Mirabilis is effectively claiming that several hundred Additional Insured Locations should not have been covered under the SUA Policies.

78.     By making such an allegation, Mirabilis is consenting that several hundred Additional Insured Locations, and in turn, all employees at those locations, will be without the benefit of Workers' Compensation coverage as required by Florida law for which Mirabilis was responsible to maintain.

79.     It is against the public policy of the state of Florida for Mirabilis to now take a position that employees at several hundred Additional Insured Locations should be without viable Worker's Compensation coverage.

80.     Accordingly, Mirabilis' claims against SUA should be dismissed as a matter of law.

<u>Twelfth Affirmative Defense – Failure to Mitigate Damages</u>

81.     SUA hereby incorporates all previous paragraphs as if set forth, in full, herein

82.     To the extent that Mirabilis has failed to mitigate, minimize, or otherwise avoid any losses or damages, any recovery against SUA must be reduced accordingly.

WHEREFORE, Defendant/Counter-Plaintiff, SUA requests judgment in its favor as to all claims made by Mirabilis, and that SUA be entitled to costs of suit as well as any and all additional relief as this Honorable Court deems fit and proper.

## COUNTERCLAIMS

### Introduction/Jurisdiction

83.     SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

84.     The following Counterclaims involve corporations which are domiciled in different states for damages exceeding $75,000.00, exclusive of interest, costs, and attorneys' fees, and are, accordingly, within the jurisdiction of the Court pursuant to 28 USCA §1332(a)(1).

85.     Mirabilis is a Professional Employer Organizations (PEO).

86.     Generally, a PEO is a corporation that provides services to third-party businesses, which enables those business owners to cost-effectively outsource the management of human resources, employee benefits, payroll and worker's compensation.

87.     In other words, a PEO actually hires a third-party company's employees as the PEO's own employees.  The PEO then "leases back" those employees to the third-party company.  This is typically all done pursuant to a Customer Services Agreement ("CSA") between the PEO and the third-party company.

88.     The net result of the transaction is that the third-party company continues its business as usual with its previous employees; however, the company does not have the hassle or responsibility of maintaining an onsite staff to run human resources, employee benefits, payroll and worker's compensation benefits.  In exchange for providing those services to the third-party company, the PEO retains a monetary benefit paid by the third-party.

89.     In 2005, Mirabilis presented its PEO book of business to SUA to underwrite a workers' compensation and employer's liability policy.

90.     SUA reviewed over 1,200 client locations presented to it by Mirabilis and selected the majority of those client locations to insure.

91.     The client locations which SUA declined to underwrite were then taken by Mirabilis to a third-party insurer, which then insured those risks via a separate third-party policy of insurance.

92.     SUA then provided Mirabilis a proposed insurance quote based on the approximate 1,000 client locations selected by SUA from the list provided to SUA by Mirabilis.

93.     Mirabilis accepted the terms of the proposed insurance quote and agreed that all of the additional client locations attached to the SUA Policies were to be included as insureds on the policies.

94.     At all relevant times, it was represented to SUA that AEM, Inc., Mirabilis Ventures, Inc., Presidion VI, and Presidion VII were all inter-related businesses, "f/k/a business entities," and/or "d/b/a business entities."

95.     At all relevant times Mirabilis represented to SUA that Mirabilis had an actual insurable interest in all Additional Insured Locations, and that Mirabilis has actual authority to bind insurance for those locations.

96.     Accordingly, the 02 Policy was underwritten by SUA binding coverage for all of the Additional Insured Locations as represented in the 02 Policy.

97.     Accordingly, the 02 Policy was issued by SUA to Mirabilis providing coverage for all of the Additional Insured Locations as represented in the 02 Policy.

98.     Upon the inception of the 02 Policy, SUA required an estimated premium charge for the 02 Policy in the amount of $3,909,188, with the final manual premium to be determined within three years of the termination of the 02 Policy as more fully set forth in Part Five of the 02 Policy.

99.     Mirabilis entered into a premium finance arrangement with SUA whereby

Mirabilis would then tender actual weekly payroll figures from all of its Additional Insured Locations. In addition, Mirabilis would also tender weekly pro-rated premium payments based on the disclosed actual payroll figure submitted by Mirabilis.

100.    This course of conduct continued throughout the entire term of the 02 Policy.

101.    In addition, Mirabilis did, and continues to, tender workers' compensation claims to SUA arising out of occurrences at the Additional Insured Locations.

102.    SUA accepted, and continues to accept, the tender of those claims. In addition SUA managed and paid-out on those claims pursuant to the terms of the SUA Policies.

103.    In late 2007, Mirabilis then represented to SUA, and/or SUA's agent, that Mirabilis desired to continue its relationship with SUA and requested that SUA continue to provide coverage to Mirabilis through January 1, 2008.

104.    In response to Mirabilis' request for coverage, SUA then issued the 03 Policy which continued to provide coverage to Mirabilis for all of the attached Additional Insured Locations as listed on the 03 Policy.

105.    As a result of Mirabilis' failure to pay premiums owed on the 03 Policy, SUA effectively cancelled the 03 Policy on March 26, 2007.

106.    In accordance with the terms of the SUA Policies, SUA attempted to conduct an audit of Mirabilis to determine the final premium owed pursuant to Part Five of the SUA Policies. This audit occurred in April 2007.

107.    Due to Mirabilis' complete failure to cooperate with documentation requested by SUA, SUA was not able to effectively complete audits in support of premium owed on the SUA Policies.

108.    Based on (a) the Additional Insured Locations submitted by Mirabilis for

coverage, (b) the weekly payroll information submitted by Mirabilis in support of its pro-rata premium payments, and (c) the SUA's coverage provided for all claims arising at Additional Insured Locations, it is estimated that Mirabilis owes SUA an estimated $671,249.67 in additional final premium due for coverage provided by the SUA Policies.

## Count I – Demand for Accounting

109.    Pursuant to the terms of the SUA Policies, including but not limited to Part Five, SUA is entitled to fully investigate and substantiate the outstanding payrolls, the job classifications of the respective employees, and the experience modification factors assigned to the respective employers.

110.    The above information is readily available to Mirabilis.

111.    The above information within the scope of control of Mirabilis.

112.    The above information is otherwise not publically available.

113.    Accordingly, SUA hereby demands an Accounting of all records in accordance with Part Five of the SUA Policies.

WHEREFORE, Defendant/Counter-Plaintiff, SUA requests this Honorable Court to enter an order demanding Mirabilis to account for all records as set forth in the SUA Policies, including but not limited to Part Five, and for attorneys' fees, costs of suit, as well as any and all additional relief as this Honorable Court deems fit and proper.

## Count II – Declaratory Judgment

114.    SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

115.    As set forth above, the SUA Policies are attached hereto and incorporated herein as Exhibits A and B.  In relevant part, the SUA Policies provide as follows:

A.  That all additional locations and operations listed on the attached Additional

Location Schedules and Operations Schedules are covered locations and operations under the SUA Policies (*See Additional Insured Locations attached to the SUA Policies)*

B.   That Mirabilis is under an obligation to cooperate with SUA in furtherance of SUA conducting an audit for final premium (*See Part Five of the SUA Policies);* and

C.   That coverage under the SUA Policies extends to alternate employers pursuant to the Alternate Employer Endorsement (*See the Alternate Employer Endorsement attached to the SUA Policies).*

116.   Accordingly, SUA requests that this Court declare that the SUA Policies provide clear and unambiguous coverage for all of the Additional Insured Locations as set forth in the SUA Policies.

117.   Accordingly, SUA requests that this Court declare that Mirabilis had an obligation to cooperate with SUA in furtherance of SUA conducting an audit for final premium as set forth in the SUA Policies.  In addition, SUA requests that this Court declare that Mirabilis has failed to cooperate with its obligation to cooperate with SUA base on the facts set forth in SUA's above and herein.

118.   Accordingly, SUA requests that this Court declare that the SUA Policies provide clear and unambiguous coverage pursuant to the Alternate Employer Endorsement as set forth in the SUA Policies.

WHEREFORE, Defendant/Counter-Plaintiff, SUA requests this Honorable Court enter judgment in its favor and against Mirabilis pursuant to 28 U.S.C. § 2201(a), declaring the following:

A.  That the SUA Policies cover all additional locations and operations listed on the attached Additional Location Schedules and Operations Schedules;

B.  That Mirabilis was under an obligation to cooperate with SUA in furtherance of SUA conducting an audit for final premium owed SUA pursuant to the SUA Policies;

C.  That Mirabilis failed to cooperate with SUA during SUA's attempted audits of Mirabilis and is therefore estopped from seeking a return of premium and/or any other related claim against SUA;

D.  That coverage under the SUA Policies extends to alternate employers pursuant to the Alternate Employer Endorsement;  and,

E.  To award attorneys' fees, costs of suit, as well as any and all additional relief as this Honorable Court deems fit and proper.

### Count III – Contract Reformation

119.   SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

120.   At all relevant times, Mirabilis represented to SUA that it sought insurance coverage for each and every Additional Insured Location and in accordance with the terms of the Alternate Employer Endorsement.

121.   SUA underwrote the SUA Policies in reliance upon Mirabilis' representations that all of the Additional Insured Locations were to be insured locations on the SUA Policies.

122.   In addition, SUA provided coverage to each and every Additional Insured Location throughout the course of the SUA Policies and, in fact, managed and paid-out on clams arising at Additional Insured Locations.

123.   Moreover, Mirabilis at all relevant times submitted weekly totals of actual

payrolls which included payrolls from all Additional Insured Locations, throughout the term of the 02 Policy.

124.    Further, at all relevant times Mirabilis tendered claims arising at Additional Insured Locations to SUA for coverage under the SUA Policies

125.    At all relevant times, it was the mutual understanding between SUA and Mirabilis that each and every Additional Insured Locations was to be covered by the SUA Policies and that coverage was to be afforded pursuant to the terms of the SUA Policies.

126.    The SUA Policies state in General Section B states as follow:

> -B.        **Who is an Insured**
>
> You are an insured if you are an employer named in Item 1 of the Information Page.  If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employee's.

127.    The SUA Policies state under General Section, Part E., titled "Locations," as follows:

> This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

128.    Item 1 of the Information Page states as follows:

> AEM, Inc.
> 8095 NW 12th St
> Suite 301
> Miami, FL 33126
> FEIN 592720545
> Locations – All usual work places of the insured at or from which operations covered by this policy are conducted at the above address unless otherwise stated herein:  See Attached Schedule

129.    An Attached Schedule to the 02 Policy includes three-hundred twenty-one (321) pages, titled "Additional Location Schedule" consisting of four (4) additional locations per page.

130.    In addition, an Attached Schedule to the 02 Policy includes one-hundred forty-one (141) pages, titled "Schedule of Operations" consisting of at least sixteen (16) additional locations per page.

131.    An Attached Schedule to the 03 Policy includes two-hundred eighty (280) pages, titled "Additional Location Schedule" consisting of four (4) additional locations per page.

132.    In addition, an Attached Schedule to the 03 Policy includes one-hundred twenty-three (123) pages, titled "Schedule of Operations" consisting of at least sixteen (16) additional locations per page.

133.    The information set forth in the Additional Location Schedules and the Schedules of Operation was provided to SUA by Mirabilis.

134.    Mirabilis provided SUA with the information set forth in the Additional Insured Locations with the intent that those Additional Insured Locations be covered under the SUA Policies.

135.    To the extent that it is determined that the SUA Policies do not specifically provide coverage for the Additional Insured Locations, this would have been due to the mutual mistake between the parties.

136.    Accordingly, to the extent necessary and pleading in the alternative, the SUA Policies should be reformed to express the intended agreement of SUA and Mirabilis, whereby, the SUA Policies shall be reformed to specifically provide coverage to all Additional Insured Locations attached to the SUA Policies and all client locations otherwise added or deleted through the term of the policies in accordance with the terms of the SUA Policies.  In addition the SUA Policies should be reformed to give full force and effect to the Alternate Employer Endorsement.

137.     Alternatively, to the extent that it is determined that the SUA Policies do not specifically provide coverage to the Additional Insured Locations, this would have been due to a unilateral mistake on the part of SUA based on the fraudulent, inequitable conduct perpetrated by Mirabilis.

138.     Accordingly, the SUA Policies should be reformed to express the clearly expressed intent of the agreement as understood by SUA, whereby, the SUA Policies shall be reformed to specifically provide coverage to all Additional Insured Locations attached to the SUA Policies and all client locations otherwise added or deleted through the term of the policies in accordance with the terms of the SUA Policies.   In addition the SUA Policies should be reformed to give full force and effect to the Alternate Employer Endorsement

WHEREFORE, Defendant/Counter-Plaintiff, SUA requests this Honorable Court to enter judgment reforming the SUA Policies, holding that the SUA Policies provide coverage for all Additional Insured Locations, for attorney's fees, costs of suit, as well as any and all additional relief as this Honorable Court deems fit and proper

## Count IV – Breach of Contract

139.     SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

140.     At all relevant times, SUA has been in compliance with all terms and conditions of the SUA Policies.

141.     In April 2007, SUA attempted to conduct an audit of Mirabilis' records in accordance with the terms of the SUA Policies.

142.     Mirabilis failed to cooperate with SUA during SUA's attempt to audit Mirabilis' records in order to compute the final premiums due under the SUA Policies.

143.     Mirabilis' failure to cooperate with SUA is a direct breach of the terms set forth in

38

Part Five of the SUA Policies.

144.    Mirabilis' failure to cooperate with SUA has directly and proximately resulted in SUA not having the proper records to complete a full and final audit of the final premium owed to SUA pursuant to the terms of the SUA Policies.

145.    Upon information and belief, if Mirabilis had cooperated with SUA, then SUA would be entitled to additional moneys as "final premium" in accordance with Part Five, Section E in the SUA Policies.

146.    As a direct and proximate result of Mirabilis' breach of the SUA Policies, SUA has suffered money damages in at least the amount of $671,249.67.

147.    As a result of Mirabilis' non-payment of this premium, SUA properly cancelled the 03 Policy, effective March 26, 2007.

WHEREFORE, Defendant/Counter-Plaintiff, SUA requests this Honorable Court to enter judgment in favor of SUA and against Mirabilis finding Mirabilis in breach of the SUA Policy and awarding SUA damages in excess of the jurisdictional limit, attorneys' fees, costs of suit, as well as any and all additional relief as this Honorable Court deems fit and proper.

## Count V – Breach of Duty of Good Faith

148.    SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

149.    Mirabilis has a duty of good faith as a duty appurtenant to its contractual obligations to the SUA Policies.

150.    As set forth above and herein, Mirabilis' conduct amounts to a breach of its duty of good faith to SUA as follows:

      a.    Intentionally failing to cooperate with SUA during SUA's attempted audits of Mirabilis' records;

b.  Intentionally and fraudulently including additional insured locations and operations on the SUA Policies for which Mirabilis had no legal authority or obligation;

c.  Intentionally and fraudulently adding and/or deleting additional insured locations and operations on the SUA Policies for which Mirabilis had no legal authority or obligation;

d.  Intentionally and fraudulently misrepresenting its business operations and its insurable interests to SUA;

e.  Intentionally and fraudulently submitting claims to be managed and paid under the SUA Policies when Mirabilis had knowledge of, or should have had knowledge of, the fact that the claims were not covered by the SUA Policies;

f.  Intentionally and fraudulently threatening SUA with claims made against it with various state's Departments of Insurance; and,

g.  Intentionally and fraudulently scamming SUA in the very same manner in which Mirabilis' attempted to avoid payment of federal taxes.

151.  As a result of Mirabilis' breach of its duty of good faith, SUA has been damaged.

WHEREFORE, Defendant/Counter-Plaintiff, SUA requests this Honorable Court to enter judgment in favor of SUA and against Mirabilis finding Mirabilis in breach of the SUA Policy and awarding SUA damages in excess of the jurisdictional limit, and for attorneys' fees, costs of suit, as well as any and all additional relief as this Honorable Court deems fit and proper.

## Count VI – Fraud in the Application for Insurance

152.  SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

153.  When applying for coverage under the SUA Policies, Mirabilis falsely represented

to SUA that Mirabilis had an insurable interest in all of the additional locations and operations as set forth in the Additional Locations Schedules and Schedules of Operations, attached to and incorporated into the SUA Policies.

154.    At the time Mirabilis made the false representations to SUA and/or SUA's agent, Mirabilis knew that the misrepresentations were false.

155.    In making such false representations to SUA and/or SUA's agent, Mirabilis intended that SUA would in fact cover such additional locations and operation.

156.    SUA and/or SUA's agent relied upon the false representations made by Mirabilis.

157.    As a result of Mirabilis' false representations and as a result of SUA's reasonable reliance upon those representations, SUA suffered damages.

WHEREFORE, Defendant/Counter-Plaintiff, SUA requests this Honorable Court to enter judgment in favor of SUA and against Mirabilis finding liable for fraud in the application of the SUA Policy and awarding SUA damages in excess of the jurisdictional limit, and for attorneys' fees, costs of suit, as well as any and all additional relief as this Honorable Court deems fit and proper.

## Count VII – Fraud in the Claims Process

158.    SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

159.    Throughout the terms of the SUA Policies, Mirabilis falsely tendered claims to SUA asserting that such claims were properly covered by the SUA Policies, whereby such claims involved occurrences at additional locations and operations as set forth in the Additional Locations Schedules and Schedules of Operations, attached to and incorporated into the SUA Policies.

160.    At the time Mirabilis made these false misrepresentations to SUA and/or SUA's

41

agent, Mirabilis knew that the misrepresentations were false.

161. In making such false misrepresentations to SUA and/or SUA's agent, Mirabilis intended that SUA would in fact cover such claims made involving occurrences at additional locations and operations as listed in the attached Additional Locations Schedules and Schedules of Operations, attached to and incorporated into the SUA Policies.

162. SUA and/or SUA's agent relied upon the false representations made by Mirabilis.

163. As a result of Mirabilis' false representations and as a result of SUA's reasonable reliance upon those representations, SUA suffered damages.

WHEREFORE, Defendant/Counter-Plaintiff, SUA requests this Honorable Court to enter judgment in favor of SUA and against Mirabilis finding Mirabilis liable for fraud in the claims process under the SUA Policy and awarding SUA damages in excess of the jurisdictional limit, and for attorneys' fees, costs of suit, as well as any and all additional relief as this Honorable Court deems fit and proper.

## Count VIII - Unjust Enrichment/Quantum Meruit/Breach of Implied-in-Fact Contract

164. SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

165. A cause of action for a quasi-contract will exist where: (1) a plaintiff conferred a benefit on the defendant; (2) a defendant had knowledge of the benefit; (3) a defendant accepted or retained the benefit; and (4) the circumstances make it unjust to retain the benefit without compensation.

166. SUA has conferred a benefit to Mirabilis by providing Worker's Compensation and Employer's Liability coverage to Mirabilis for all of the additional locations and operation listed in the SUA Policies from the inception of the policy through the date of this pleading being filed.

167.     Mirabilis at all times had knowledge that SUA was providing coverage to all additional locations and operations listed in the SUA Policies because Mirabilis submitted weekly premium payments based on actual and estimated payrolls from all of the additional locations and operations, and Mirabilis, in fact, submitted claims under the SUA Policies which arose at various additional locations and operations.

168.     Mirabilis at all times accepted and retained the benefit of SUA's management and payments of all claims tendered to SUA by Mirabilis pursuant to the SUA Polices.

169.     Moreover, SUA and Mirabilis followed a course of conduct as set forth above and herein, by which Mirabilis submitted all Additional Insured Locations to SUA for coverage; Mirabilis then submitted weekly payroll estimates and pro-rata premium payments based on all of those Additional Insured Locations; and SUA, in fact, accepted the tender of claims made by Mirabilis arising at the Additional Insured Locations.

170.     Here, the circumstances make it unjust for Mirabilis to retain the benefit without just compensation to SUA.

WHEREFORE, Defendant/Counter-Plaintiff, SUA requests this Honorable Court to enter judgment in favor of SUA and against Mirabilis finding Mirabilis liable for breach of implied-in-fact contract and finding that Mirabilis has been unjustly enriched and awarding SUA damages sounding in restitution, quantum meruit and/or equity for an amount in excess of the jurisdictional limit, and for attorneys' fees, costs of suit, as well as any and all additional relief as this Honorable Court deems fit and proper.

### Count IX - Exemplary Damages Pursuant to Florida State Special Audit Rule J

171.     SUA hereby incorporates all previous paragraphs as if set forth, in full, herein.

172.     Florida State Special Audit Rule J states as follows:

> In accordance with Section 440.381(6), Florida Statutes, if an employer understates or conceals payroll, or misrepresents or conceals employee duties so as to avoid proper classification for premium calculations, or misrepresents or conceals information pertinent to the calculation and application of an experience rating modification factor, the employer, or his agent or attorney, <u>shall</u> pay to the insurance carrier a penalty of 10 times the amount of the difference in premium paid and the amount the employer  should have paid and reasonable attorney's fees.  The penalty may be enforced in the circuit courts of this state.

173.    As set forth by the facts above and herein, Mirabilis understated and/or concealed payroll, employee duties, and information relating to the proper classification of employees and information relating to the proper experience modification factor relating to the additional locations and operations set forth in the Additional Location Schedules and Schedules of Operations attached to the SUA Policies.

174.    In accordance with Rule J, Mirabilis is liable to SUA for ten (10) times the amount of the difference in premium paid and the amount the employer should have paid.  In addition, Mirabilis is liable to SUA for all reasonable attorneys' fees.

175.    Currently, SUA believes that the difference between that paid by Mirabilis and that which Mirabilis should have paid is to equal $671,249.67.  However, SUA reserves the right to adjust this figure in accordance with its right to fully audit Mirabilis pursuant to the terms of the SUA Policies and pursuant to the claims as made against Mirabilis above and herein.

WHEREFORE, Defendant/Counter-Plaintiff, SUA requests this Honorable Court to enter judgment in favor of SUA and against Mirabilis finding Mirabilis liable to SUA for an amount in accordance with that called for in Rule J, for reasonable attorney's fees, for costs of suit, as well as any and all additional relief as this Honorable Court deems fit and proper.

## DEMAND FOR JURY TRIAL

SUA demands a trial by jury on all issues so triable as a matter of right.


CASTLEPOINT NATIONAL INSURANCE COMPANY, f/k/a SUA Insurance Company


By: _____ /s/ Kevin M. Lougachi _____
Kevin M. Lougachi, Esq.
Florida Bar # 15468
BOLLINGER, RUBERRY & GARVEY
500 West Madison Street, Suite 2300
Chicago, IL 60402
(312) 466-8000
Fax: (312) 466-8001
kevin.lougachi@brg-law.net
TRIAL COUNSEL for *CASTLEPOINT NATIONAL INSURANCE COMPANY, f/k/a SUA Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that **<u>CASTLEPOINT NATIONAL INSURANCE COMPANY, f/k/a SUA INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTER-CLAIMS AND DEMAND FOR JURY TRIAL</u>** was filed electronically on July 30, 2010, in accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

By:       /s/ Kevin M. Lougachi
Kevin M. Lougachi, Esq.
Florida Bar # 15468
BOLLINGER, RUBERRY & GARVEY
500 West Madison Street, Suite 2300
Chicago, IL 60402
(312) 466-8000
Fax: (312) 466-8001
kevin.lougachi@brg-law.net
TRIAL COUNSEL for *CASTLEPOINT NATIONAL INSURANCE COMPANY, f/k/a SUA Insurance Company*